# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jul 22 2015, 10:00 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS

Alan S. Brown
Maggie L. Smith
Bryan S. Strawbridge
Jenai M. Brackett
Abigail T. Rom
Frost Brown Todd LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

G. Daniel Kelley
Thomas E. Mixdorf
Ice Miller LLP
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Hameck Oil Company, Ltd., TWE Management, LLC, Eckard Global, LLC, and Troy W. Eckard, <br><br> *Appellants-Defendants,* <br><br> v. <br><br> J Group Energy I, LLC and Bakken Oil & Gas Management, Inc., and HOC Bakken Legacy I, LLC,[1] | July 22, 2015 <br><br> Court of Appeals Case No. 49A02-1409-PL-635 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Michael D. Keele, Judge <br><br> Cause No. 49D07-1311-PL-40165 |

---

[1] We include HOC Bakken Legacy I, LLC in the caption because it was added as a plaintiff on September 8, 2014, when the trial court granted Plaintiffs' request to file a second amended complaint. Pursuant to Indiana Appellate Rule 17(A), a party of record in the trial court shall be a party on appeal.

*Appellees-Plaintiffs.*

## Kirsch, Judge.

In 2011, Hameck Oil Company, Ltd. ("Hameck Oil"), J Group Energy I, LLC ("J Group") and nonparty Eckard Global Energy, LLC ("EGE") executed a Company Agreement ("Company Agreement") forming HOC Bakken Legacy I, LLC ("Legacy I" or "the Company"), a Delaware limited liability company, involved in the business of acquiring oil and gas leases in North Dakota. Disputes arose, and this lawsuit ensued. J Group, and Bakken Oil and Gas Management, Inc. ("Bakken Oil") (collectively, "Plaintiffs") filed a complaint, later amended, against Hameck Oil, TWE Management, LLC ("TWE"), Eckard Global, LLC ("Eckard Global"), and Troy W. Eckard ("Eckard") (collectively, "Defendants"), seeking injunctive relief and, later, damages. Defendants sought to compel arbitration pursuant to a section of the Company Agreement, and after the trial court denied Defendants' Motion to Compel Arbitration, Defendants now appeal and raise several issues, of which we find the following restated issue to be dispositive: whether the trial court erred when it determined that the Company Agreement's arbitration provision did not apply to Hameck Oil, the Company's Manager.

We affirm.

# Facts and Procedural History[2]

## *The Parties*

Eckard is a Texas businessman, and in October 2011, he traveled to Indiana several times to discuss a business investment proposal with individuals, some or all of whom comprised Plaintiff J Group, an Indiana limited liability company.[3] J Group likewise traveled to Texas and attended meetings and conferences on the subject. According to the complaint, Eckard's proposal was that he, through companies he owned, and J Group would form a limited liability company for purposes of acquiring oil and gas leases. Eckard would be a minority stakeholder in the company, but would serve as its Manager; J Group would be majority stakeholder, would fund the venture, and would have certain rights to participate in key decisions, but would not be involved in the day-to-day operations of the business. *Appellees' App.* at 7.

Following in-person meetings and oral and written communications, Legacy I was formed pursuant to the Company Agreement, which was executed on December 19, 2011. Generally speaking, Legacy I's purpose was to acquire oil/gas/mineral leases that would generate income and revenue for the investment venture. Legacy I was formed as a limited liability company

---

[2] We held oral argument on June 17, 2014 at Purdue University's Krannert School of Executive Management. We thank counsel for their preparation and argument, and we commend them on their outstanding advocacy. We also thank the students for their insightful questions and comments posed after, but not specifically related to, the oral argument.

[3] The record before us indicates that J Group has four members: Ethan Jackson, and his sons, Wessley Jackson, Blake Jackson, and Mark Jackson. *Appellants' App.* at 203, 213.

organized under the laws of the State of Delaware with its principal place of business in Indianapolis. J Group owns a 95% ownership interest in Legacy I and is classified as a "B Member." It has contributed 100% of the capital to Legacy I, which exceeds $10 million. EGE owns a 5% ownership interest in Legacy I and is classified as an "A Member." EGE has contributed no capital to Legacy I, and it is not a party to this lawsuit. Eckard is manager of, and he owns and controls, EGE. The Company Agreement named Hameck Oil as Manager of Legacy I. Hameck Oil is a limited partnership organized under the laws of Texas with its principal place of business in Texas. The Company Agreement was signed by three entities: (1) Manager Hameck Oil (Eckard signed in his capacity as president of TWE, which is a general partner of Hameck Oil); (2) Class A Member EGE (Eckard signed as manager of EGE); and (3) Class B Member J Group (Ethan Jackson signed as manager of J Group).

[5] On July 28, 2013, Eckard sent an email to representatives of J Group stating that Hameck Oil would be resigning as Manager of Legacy I effective August 15, 2013.[4] On November 14, 2013, Plaintiff Bakken Oil was appointed as the new Manager of Legacy I. Bakken Oil is a corporation organized under the

---

[4] Section 4.3 of the Company Agreement provides that "[a] Manager may resign at any time in writing setting forth the effective date of the resignation and sending it to all Members. The resignation need not be accepted in order to be effective." *Appellants' App*. at 36.

laws of the State of Delaware with its principal place of business in Indianapolis.

### The Lawsuit

Plaintiffs filed their complaint on November 1, 2013, amended December 2, 2013, seeking, initially, preliminary and permanent injunctive relief, namely that Defendants be ordered to turn over books, records, and other materials to allow for the orderly transition of company business from Hameck Oil to Bakken Oil, the new Manager of Legacy I. In addition to naming Eckard and Hameck Oil as Defendants, Plaintiffs also named Defendants TWE and Eckard Global,[5] which are limited liability companies organized under the laws of Texas with principal places of business in Texas. Plaintiffs did not name Class A Member EGE as a defendant in the lawsuit.

The complaint alleges that Hameck Oil, as the Manager of Legacy I, had access to and control over the books, records, and accounts of Legacy I and that TWE, as the General Partner of Hameck Oil, also had access and control over the books and records of Legacy I. The complaint claims that Eckard Global "has been used by the other Defendants" to conduct management duties with respect to Legacy I and, like the others, had access to the books and records of Legacy I. *Appellees' App*. at 8. It further asserts that at all material times Eckard directed and controlled the actions of the other named Defendants and that

---

[5] Eckard is manager and sole member of Eckard Global.

Hameck Oil has failed to discharge its responsibilities, refused to cooperate, and violated fiduciary duties under the provisions of the Company Agreement. Plaintiffs contend in the complaint, "Defendants have routinely ignored and manipulated the corporate forms for their own purposes," including, but not limited to, failing to keep corporate records, comingling assets and affairs, and misdirecting revenues of Legacy I. *Id*. at 9-10.

### The Company Agreement's Arbitration Provisions - Original and Amended

In December 2013, Defendants filed a Motion to Dismiss and a Motion to Compel Arbitration pursuant to the Company Agreement. The Motion to Dismiss sought dismissal of Defendants Eckard and Eckard Global because they did not sign, and were not parties to, the Company Agreement. *Appellants' App*. at 95, 101. Alternatively, Defendants argued that Plaintiffs' claims against all Defendants should be subject to arbitration. In support of arbitration, Defendants relied on Section 13.10 of the Company Agreement, entitled "Binding Arbitration," which provides in part:

> Any controversy, claim or dispute between or among the Company and any Member or among the Members arising out of or relating to this Company Agreement or any other matters pertaining to the Company, shall be settled by binding arbitration in Newcastle County, Delaware, in accordance with the applicable rules of the American Arbitration Association ("AAA") then in effect. . . . The Members expressly agree that the provisions of this Section 13.10 shall be valid and enforceable to the greatest extent possible under the laws of the United States of America or the State of Delaware. . . . Notwithstanding the foregoing, the Company may pursue suit for injunctive relief against any Member who violates the Member's covenants in Article 11.

*Appellants' App*. at 48.

[9] In January 2014, the trial court granted the parties' joint motion to stay the litigation as they pursued settlement negotiations. During the stay, Defendants produced additional records for Legacy I, and Plaintiffs claim that this revealed that Defendants' actions caused in excess of $1.7 million in harm to Legacy I and J Group.

[10] On May 7, 2014, Bakken Oil and J Group amended the Company Agreement to delete Section 13.10 (the binding arbitration provision).[6] The amended/replacement section reads:

> All provision [sic] of this Company Agreement relating to or requiring arbitration of any controversy, claim, dispute or anything else which has to date arisen with respect to, or which in the future may arise or relate to this Company Agreement, or to any other matter pertaining to the Company, including but not limited to Article 13.10 and Article 4.10, are deleted and shall have no force or effect whatsoever.

*Id*. at 204.[7]

[11] On May 12, 2014, five days after Plaintiffs' May 7 amendment to the Company Agreement that deleted the arbitration provision, Plaintiffs filed a Motion to Lift Stay, which motion the trial court granted on May 13. Also on May 13,

---

[6] Plaintiffs assert that they amended the Company Agreement pursuant to Section 13.6, which permits amendment "by the Manager with consent of a Majority of the Members." *Appellees' App*. at 38.

[7] Bakken Oil and J Group also amended the Company Agreement to delete former Section 13.2, which stated that Delaware law was the governing law, and replaced it with a new Section 13.2 that provided the laws of Indiana shall govern the Company Agreement and all issues, claims, or matters arising under it. *Appellants' App*. at 204. The amendments also provided that Legacy I "shall wind up." *Id*.

Plaintiffs sought to file a second amended complaint, but the trial court denied the request pending determination of Defendants' December 2013 Motion to Dismiss and Motion to Compel Arbitration. A few days later, on May 16, Defendants filed a Renewed Motion to Dismiss and Motion to Compel Arbitration.

On May 22, 2014, Defendants Hameck Oil and EGE filed a complaint in a Texas state court against the four individuals that comprise J Group – Ethan Jackson, Wessley Jackson, Blake Jackson and Mark Jackson – as well as other individuals and entities. The forty-three-page complaint alleges that the Jacksons, their attorney and their accountants gained access to confidential and propriety information during the formation and operation of Legacy I, including access to confidential lease summaries and exclusive and unique mapping and trend analysis, and that they used this information to, among other things, engage in fraud, misappropriation of confidential trade secrets, and unfair competition over a three-year period. They also allege tortious interference with the Legacy I Company Agreement and breach of fiduciary duties. The lawsuit was subsequently removed to, and is pending in, Federal District Court for the Eastern District of Texas.

### Trial Court's August 14, 2014 Order

The trial court held a hearing on Defendants' motions on July 23, 2014, at which counsel for both parties presented argument. Thereafter, on August 14, 2014, the trial court denied Defendants' Motion to Dismiss, finding that Plaintiffs did not sue Eckard or Eckard Global strictly in their capacities as

signatories to the Company Agreement, but rather because they had access to and control over the books and records of Legacy I and that Eckard Global, in addition to having access to books and records, had been used by other Defendants to conduct management duties with respect to Legacy I. The trial court determined that Defendants failed to carry the requisite burden for a motion to dismiss and denied it.

[14] With regard to Defendants' Motion to Compel Arbitration, the trial court found that "[t]he plain terms of the Company Agreement do not provide the Manager with a right to arbitrate the dispute before the Court." *Appellants' App*. at 13. More specifically, the trial court determined that Section 13.10 regarding Binding Arbitration, identifies the Company and the Members as the entities that are subject to arbitration, not the Manager. *Id*. at 14. Having determined that the plain terms of the Company Agreement did not provide for arbitration of the dispute in this case and denying Defendants' motion on that basis, the trial court declined to address Plaintiffs' arguments that the Company Agreement was amended to remove arbitration provisions and that Defendants waived any right to compel arbitration by having filed the Texas lawsuit.

[15] On August 18, 2014, Plaintiffs filed a renewed motion for leave to file a second amended complaint that added Legacy I as a named plaintiff and sought damages in addition to injunctive relief. *Appellees' App*. at 1-2. The trial court

granted their request on September 8, 2014.[8] Defendants timely filed an interlocutory appeal[9] and, at Defendants' request, the trial court stayed the proceedings pending resolution of this appeal.

## Discussion and Decision

[16] Defendants assert that the trial court erred when it denied its Motion to Compel Arbitration. We review a trial court's denial of a motion to compel arbitration de novo. *Smith Barney v. StoneMor Operating LLC*, 953 N.E.2d 554, 557-58 (Ind. Ct. App. 2011)*, aff'd on reh'g*, 959 N.E.2d 309 (Ind. Ct. App. 2011); *Norwood Promotional Prods., Inc. v. Roller*, 867 N.E.2d 619, 623 (Ind. Ct. App. 2007), *trans. denied*. A party seeking to compel arbitration must satisfy a two-pronged burden of proof. *Daimler Chrysler Corp. v. Franklin*, 814 N.E.2d 281, 284 (Ind. Ct. App. 2004). The party must first demonstrate the existence of an enforceable agreement to arbitrate the dispute; second, the party must prove that the dispute is the type of claim that the parties agreed to arbitrate. *Norwood*, 867 N.E.2d at 623 (citing *Showboat Marina Casino P'ship v. Tonn & Blank Constr.*, 790 N.E.2d 595, 597 (Ind. Ct. App. 2003)).

[17] When determining whether parties have agreed to arbitrate a dispute, we apply ordinary contract principles. *Daimler Chrysler*, 814 N.E.2d at 285-86. Words used in a contract are to be given their usual and common meaning unless,

---

[8] Our reference to "Plaintiffs" throughout this decision includes Legacy I.

[9] *See* Ind. Code § 35-57-2-19(a)(1) (appeal may be taken from order denying application to compel arbitration); Ind. Appellate Rule 14(D).

from the contract and the subject matter thereof, it is clear that some other meaning was intended. *Id.* at 285; *see also Smith Barney*, 953 N.E.2d at 558 (when interpreting arbitration clause, court is to give language of contract its plain and ordinary meaning). Every doubt is to be resolved in favor of arbitration, and the parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the language used. *Norwood*, 867 N.E.2d at 623-24 (quotations omitted). However, parties are only bound to arbitrate those issues that by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication. *Id.* Arbitration is a matter of contract and a party cannot be required to submit to arbitration unless it has agreed to do so. *MPACT Constr. Grp., LLC v. Superior Concrete Constructors, Inc.,* 802 N.E.2d 901, 910 (Ind. 2004).

[18] Legacy I is a limited liability company organized pursuant to the Delaware Limited Liability Company Act. 6 Del. Code § 18-101 *et seq*. ("the LLC Act"). "It is the policy of [the LLC Act] to give the maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements." 6 Del. Code § 18-1101(b); *see also Kuroda v. SPJS Holdings LLC*, 971 A.2d 872, 880 (Del. Ch. 2009) (limited liability companies are creatures of contract, and parties have discretion to use LLC agreement to define character of company and rights and obligations of parties).

[19] Turning to the Company Agreement at hand, Defendants argue that the trial court erred when it denied Defendants' Motion to Compel Arbitration because Section 13.10 of the Company Agreement is a valid and enforceable arbitration

provision that "covers the subject matter of Plaintiffs' complaint[.]" *Appellants' Br.* at 4-5. Again, it reads:

> Any controversy, claim or dispute between or among the Company and any Member or among the Members arising out of or relating to this Company Agreement or any other matters pertaining to the Company, shall be settled by binding arbitration in Newcastle County, Delaware, in accordance with the applicable rules of the American Arbitration Association ("AAA") then in effect. . . . The Members expressly agree that the provisions of this Section 13.10 shall be valid and enforceable to the greatest extent possible under the laws of the United States of America or the State of Delaware. . . . Notwithstanding the foregoing, the Company may pursue suit for injunctive relief against any Member who violates the Member's covenants in Article 11. The Members will continue to perform their respective obligations under this Company Agreement pending the final resolution of any dispute, unless to do so would be impossible or impractical under the circumstances.

*Appellants' App.* at 48.

[20] Defendants' position is that Section 13.10 applies, and arbitration should be ordered, because the section provides that it applies to any controversy, claim or dispute "*arising out of or relating to this Company Agreement or any other matter pertaining to the Company*" and that Plaintiffs' claims – alleging that Hameck Oil, as Manager, has not and will not turn over the books and records, has breached its fiduciary duties, and that it thereby has caused economic damages – clearly arise out of or relate to the Company Agreement. *Id.* (emphasis added). Therefore, Defendants contend, the dispute should be settled by arbitration.

[21] This position, however, overlooks the prior modifying language in Section 13.10 stating that any controversy, claim or dispute "*between or among the*

*Company and any Member or among the Members*" shall be settled by arbitration. *Id.* (emphasis added). Other language, appearing later in Section 13.10, likewise focuses on the Members, stating, "*The Members expressly agree* that the provisions of this Section 13.10 shall be valid and enforceable to the greatest extent possible under the laws of the United States of America or the State of Delaware[.]" *Id.* (emphasis added). The section concludes with the statement that, while any arbitration proceeding is pending, "*The Members* will continue to perform their respective obligations under this Company Agreement pending the final resolution of any dispute[.]" *Id.* (emphasis added). In this case, Plaintiffs' claim is against Hameck Oil, former Manager, as well as affiliated Defendants Eckard, Eckard Global, and TWE. Section 13.10 does not list or identify the Manager as an entity with whom disputes are arbitrable. As with any contract, the court must give the language of the contract its plain and ordinary meaning, and the parties are only bound to arbitrate those issues that by clear language they have agreed to arbitrate. *Norwood*, 867 N.E.2d at 623-24. We agree with the trial court that disputes with the Manager are not within the scope of Section 13.10. Had the parties intended to include disputes with the Manager in the arbitration provision of 13.10, they could have done so. They did not, and we cannot rewrite the arbitration provision to impose new or different obligations on the parties.[10]

---

[10] Defendants argue that, in addition to Hameck Oil being able to enforce the arbitration clause, the non-signatory Defendants Eckard Global, TWE, and Eckard are entitled to enforce the arbitration clause pursuant to the doctrine of equitable estoppel given that J Group asserted allegations of interdependent and

[22] On appeal, Defendants assert that, even if the Manager is not expressly included by the language of Section 13.10, the Company Agreement, when construed in its entirety, reflects that Manager "Hameck Oil is the Company, Member, or both," based on the fact that Hameck Oil executed the Company Agreement beneath the words "the undersigned Members" and also because the Company Agreement gives such power to the Manager that, not only does it act on behalf of the Company, but that the Manager *is* the Company. *Appellants' Br*. at 10.

[23] Plaintiffs assert that this "extraordinary argument" was not made to the trial court, and, thus, it is waived. *Appellees' Br*. at 17. Regardless of waiver, we are not persuaded that, as Defendants' claim, the Manager is the legal equivalent of a Member and/or the Company. The Company Agreement identifies the "Company" as Legacy I. *Appellants' App*. at 30. It identifies Hameck Oil as the Manager. *Id*. at 36 ("The initial Manager shall be Hameck Oil Company, Ltd., a Delaware limited partnership"). The Company Agreement defines a Member as "any person who owns units and who has signed the Company Agreement," *id*. at 31, and Hameck Oil does not own units. Furthermore, the Members are specifically identified on the addendum to the Company Agreement as the following: (1) J Group, a Class B Member; and (2) EGE, a Class A Member.

---

concerted misconduct by Defendants. *Appellants' Br*. at 5, 14-15. Having determined that the Company Agreement does not provide Manager Hameck Oil with a right to compel arbitration, we find that equitable estoppel does not apply here, because the non-signatories' rights to arbitration, if any, would be derivative of Hameck Oil's right.

*Id.* at 51. The Company Agreement assigns various duties and responsibilities to the Manager. For example, Section 4.1 gives the Manager the power to "exclusively exercise the powers of the Company and shall manage the business and affairs of the Company," and that any substantial decisions shall be made only by the Manager. *Id.* at 34. Other sections of the Company Agreement outline the Manager's responsibilities, such as: Section 1.1 (Manager's responsibilities regarding capital accounts); Sections 4.1-4.10 (Manager's fees and responsibilities); Section 6.1(c) (Manager's ability to request additional capital contributions); Sections 9.1-9.5 (Manager's responsibility regarding books and records, tax returns, tax elections, and financial statements); Section 12.1 (wind up procedures). *Id.* at 29, 34-37, 37, 42-43, 45. Based on the foregoing, we do not accept Defendants' suggestion that Hameck Oil, as Manager, was also a Member and/or the Company.

[24] Defendants urge that, even if it is determined that disputes with the Manager are not included in the language of Section 13.10 and that the Manager is neither the Company nor a Member, another section of the Company Agreement – Section 4.10 – expressly addresses disputes between the Manager, the Company, and the Members and states that such disputes are arbitrable. Section 4.10 provides:

> The rights, compensation, and ownership of the Manager and its Affiliates creates several and various conflicts of interest. The Manager has not developed, and does not expect to develop, any formal process for resolving conflicts of interest. While the conflicts of interest that exist between the Manager, the Company, and the Members, and that could later develop, could materially and adversely

> affect the Members, the Manager, in its sole judgment and discretion, will try to mitigate such potential adversity by the exercise of business judgment in an attempt to fulfill its fiduciary obligations. There can be no assurance that such an attempt will prevent adverse consequences resulting from the numerous conflicts of interest. *If such conflicts cannot be resolved, then the dispute will be resolved by arbitration, pursuant to Section 13.10 below.*

*Id*. at 37 (emphasis added). We find that the language of the arbitration provision in Section 4.10 identifies only a single class of disputes involving the Manager that are arbitrable: conflicts of interest. Plaintiffs do not seek resolution of a conflict of interest between a Member (or the Company) and the Manager, and we find Section 4.10 is not applicable to the present dispute.

[25] Defendants have failed to show that the trial court erred when it determined that the plain language of the Company Agreement did not provide Manager Hameck Oil with a right to arbitrate the dispute.[11]

[26] Affirmed.

Friedlander, J., concurs.

Baker, J., concurs in result with separate opinion.

---

[11] Because we resolve this case on the basis that the plain language of the Company Agreement did not give Hameck Oil the right to enforce arbitration of the dispute with Plaintiffs, we do not address the effect, if any, of Plaintiffs' May 2014 amendment of the Company Agreement, deleting the arbitration clause language of Section 13.10, nor do we reach Plaintiffs' argument that Defendants waived any right to arbitration by suing members of J Group and affiliated individuals in Texas.

| | |
|---|---|
| Hameck Oil Company, Ltd., TWE Management, LLC, Eckard Global, LLC, and Troy W. Eckard, | Court of Appeals Case No. 49A02-1409-PL-635 |
| *Appellants-Defendants,* | |
| v. | |
| J Group Energy I, LLC, Bakken Oil & Gas Management, Inc., and HOC Bakken Legacy I, LLC, | |
| *Appellees-Plaintiffs* | |

**Baker, Judge, concurring in result.**

[27] While I concur in the result reached by the majority, I respectfully part ways with the analysis it applies to get there. Specifically, I disagree with the majority's interpretation of the Company Agreement. In my view, it is readily apparent that the parties to the contract intended that all disputes related to the Company should be submitted to binding arbitration. I concede that the drafting of the arbitration provision is somewhat inartful, but I still believe that the Company Manager is bound to arbitrate disputes just as Members and the

Company are bound. The Manager is a signatory to the contract, and the Manager was empowered to—and charged with—acting *as* the Company and conducting its day-to-day business. Furthermore, Section 4.10 of the Company Agreement provides that the Manager must abide by certain procedures when a conflict of interest arises. If those procedures do not resolve the conflict, then the binding arbitration provision governs. The clear import of Section 4.10 is that, in all cases except for conflicts of interest, disputes involving the Manager are to be submitted to binding arbitration. Consequently, I disagree with the majority's conclusion that disputes involving the Manager are not covered by the binding arbitration provision.

[28] Although in my opinion the Defendants had a right to arbitration granted by the Company Agreement, I believe that the Defendants waived that right by filing a lawsuit related to the Company in Texas. It is well established that a contractual right to arbitrate can be waived, and that participation in litigation supports a finding of waiver. *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 587, 589-91 (7th Cir. 1992) (applying Indiana law). Here, the Defendants not only participated in litigation, they filed their own lawsuit regarding matters that, on their face, arise out of or relate to the Company and the Company Agreement. The Defendants cannot have it both ways, and by instituting litigation, they waived their right to enforce the binding arbitration provision in the lawsuit filed by the Plaintiffs. As a result, I agree with the majority that the trial court's judgment should be affirmed.