# Illinois Official Reports

## Appellate Court

*State Farm Fire & Casualty Co. v. Watts Regulator Co.*, 2016 IL App (2d) 160275

| | |
|---|---|
| Appellate Court Caption | STATE FARM FIRE AND CASUALTY COMPANY, as Subrogee of Cecilia Montero, Plaintiff-Appellee, v. WATTS REGULATOR COMPANY, Defendant-Appellant. |
| District & No. | Second District Docket No. 2-16-0275 |
| Filed | September 29, 2016 |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 15-AR-148; the Hon. Michael J. Chmiel, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Eugene M. LaFlamme, of McCoy Leavitt Laskey LLC, of Waukesha, Wisconsin, for appellant. <br><br> William J. Hoffman and Jonathan J. Tofilon, both of Grotefeld Hoffmann Schleiter Gordon Ochoa & Evinger, LLP, of Geneva, for appellee. |
| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion. <br> Justices Hutchinson and Zenoff concurred in the judgment and opinion. |

**OPINION**

¶ 1    After plaintiff, State Farm Fire and Casualty Company, filed a subrogation suit against defendant, Watts Regulator Company, seeking to recover payments it made to its insured, Cecilia Montero, Watts moved to compel arbitration through Arbitration Forums, Inc. The parties were signatories to that entity's "Property Subrogation Arbitration Agreement" (Arbitration Agreement), and they disagreed over the interpretation of an amendment to the Arbitration Agreement, which would determine whether Montero's claim was subject to compulsory arbitration. Watts argued that the claim's accrual date (*i.e.*, the date of loss) was determinative of whether the amendment applied, and State Farm took the position that the filing date was determinative. The trial court ruled in State Farm's favor, denying Watts's motion to compel arbitration. We affirm.

¶ 2                                I. BACKGROUND

¶ 3    This case arose after Montero's home sustained water damage. The event occurred on September 7, 2013. At that time, the Arbitration Agreement mandated that signatories forgo litigation and submit certain personal, commercial, or self-insured property subrogation claims to arbitration. Specifically, arbitration was compulsory for property subrogation claims seeking up to $100,000.

¶ 4    On November 4, 2014, Arbitration Forums posted a bulletin on its website, notifying its members that the Arbitration Agreement would be amended, effective January 1, 2015, to exclude all product-liability claims from the compulsory-arbitration provision. Specifically, the amendment stated that "cases *filed* prior to January 1, 2015, will remain in arbitration's jurisdiction and will be processed to hearing." (Emphasis added.)

¶ 5    On April 15, 2015, State Farm filed its suit against Watts, seeking recovery of certain amounts it paid to Montero. In an amended complaint, State Farm alleged that, on September 7, 2013, a fitting on a Watts-manufactured FloodSafe-brand supply line to Montero's Wonder Lake home fractured and flooded the kitchen, hallway, and dining room, causing extensive damage. State Farm raised two counts, strict liability and negligence,[1] alleging that it paid Montero $14,385 for expenses and repairs under the terms of Montero's policy and that it also sustained a loss of $1000 in the form of the deductible amount under the policy, thereby becoming subrogated to her rights thereunder. State Farm sought a judgment of $15,385.

¶ 6    On August 21, 2015, Watts filed its answer, denying the allegations and raising several affirmative defenses, including contributory negligence and spoliation. It also reserved the right to assert additional affirmative defenses, "once evidence is uncovered during discovery in this litigation that would support such additional defenses."

¶ 7    On December 22, 2015, Watts moved to compel arbitration through Arbitration Forums and to stay or dismiss the arbitration proceedings through the trial court,[2] asserting that the

---

[1]There are two types of product-liability claims: strict-liability and negligence claims. *Blue v. Environmental Engineering, Inc.*, 215 Ill. 2d 78, 89 (2005).

[2]Pursuant to Illinois Supreme Court Rule 86 (eff. Jan. 1, 1994), the circuit court of McHenry County's local rules provide that certain civil actions, including claims such as Montero's, are subject to mandatory arbitration. 22d Judicial Cir. Ct. R. 17.01 (June 1, 2007). The trial court had set this case for arbitration pursuant to the local rule.

claim here accrued on September 7, 2013, which was prior to the effective date of the Arbitration Agreement amendment and that thus the amendment did not apply. It also noted that State Farm had stipulated in other cases that claims that accrued prior to the amendment were subject to the Arbitration Agreement. Watts argued, as it does in this appeal, that (1) State Farm was judicially estopped from refusing to arbitrate Montero's claim through Arbitration Forums and (2) the amendment did not apply to the claim.

¶ 8 The Arbitration Agreement, which the parties agree was effective when the claim accrued in this case, states that Arbitration Forums is authorized by signatory companies to make appropriate rules and regulations for the presentation and determination of controversies under the agreement. The amendment at issue states, in relevant part: "While the use of the Property Program to resolve disputes involving product liability claims arising from an alleged defective product will no longer be compulsory as of January 1, 2015, cases *filed* prior to January 1, 2015, will remain in arbitration's jurisdiction and will be processed to hearing." (Emphasis added.)

¶ 9 On February 25, 2016, State Farm filed its response to Watts's motion to compel, arguing that, because the filing date determined whether the amendment applied and because it filed its suit after the amendment's effective date, the claim need not be arbitrated under the Arbitration Agreement. It also noted that Watts filed its motion to compel after it filed an appearance and an answer to State Farm's complaint. State Farm noted that Watts was a signatory to the Arbitration Agreement and in other jurisdictions had unsuccessfully challenged Arbitration Forums' ability to alter the terms of the Arbitration Agreement.

¶ 10 On March 4, 2016, Watts moved to continue the court-set arbitration hearing, which was scheduled for April 8, 2016. As relevant here, Watts alleged that, shortly after Watts answered the amended complaint, State Farm approached Watts about resolving the claim through Arbitration Forums, although State Farm ultimately refused to submit the matter to arbitration through that entity. Watts noted that it continued to take the positions that State Farm should be ordered to submit to arbitration through Arbitration Forums and that the court-set arbitration should be stayed or dismissed, but, alternatively, Watts asked that the court continue the court-set arbitration for 60 days.

¶ 11 In its reply in support of its motion to compel, Watts argued that, because State Farm failed to address judicial estoppel in its response to Watts's motion, it had conceded the issue. Watts also alleged that State Farm had initially, including in September 2015, represented that it would agree to voluntarily dismiss the suit and submit the matter to arbitration through Arbitration Forums. It attached correspondence between the parties' counsel, including a September 23, 2015, e-mail wherein State Farm's counsel stated that he "will file a motion to voluntarily dismiss the suit and strike the [court-set] Arb [*sic*] date."

¶ 12 On March 18, 2016, the trial court denied Watts's motion to compel arbitration. It also struck the April 8, 2016, court-set arbitration hearing date and set a new date.

¶ 13 Pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Jan. 1, 2016) (interlocutory appeals as of right concerning an injunction), Watts appeals the denial of its motion to compel arbitration.

## II. ANALYSIS

### A. Forfeiture

¶ 16  Preliminarily, we address State Farm's argument that Watts has forfeited any challenge to arbitration through the trial court because Watts did not raise the issue in its answer and affirmative defenses. Watts responds that State Farm's argument is itself forfeited because State Farm raises it for the first time on appeal. We agree with Watts that State Farm's argument is forfeited. Indeed, as noted above, State Farm's counsel stated in a September 23, 2015, email that he "will file a motion to voluntarily dismiss the suit and strike the Arb date." Given these circumstances, we decline to find Watts's arbitration argument forfeited.

### B. Judicial Estoppel

¶ 18  Turning to the merits, Watts argues first that judicial estoppel precludes State Farm from opposing arbitration through Arbitration Forums because its opposition is directly contrary to its position in other cases across the country against Watts. Watts acknowledges that the trial court did not address the application of judicial estoppel here, but it notes that it raised the issue in its motion to compel arbitration. Watts contends that State Farm should have been considered to have forfeited any opposition to the application of judicial estoppel and that the trial court erred in denying Watts's motion to compel. Watts also contends that judicial estoppel applies to shifting legal, not merely factual, positions. For the following reasons, we conclude that judicial estoppel does not apply because State Farm's opposition to arbitration through Arbitration Forums is based on its *legal* interpretation of the Arbitration Agreement and judicial estoppel applies only to inconsistent *factual* positions.

¶ 19  Judicial estoppel is an equitable doctrine invoked by the court at its discretion. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001); see also *Ceres Terminals, Inc. v. Chicago City Bank & Trust Co.*, 259 Ill. App. 3d 836, 850-51 (1994) (trial court's determination of whether to apply judicial estoppel is reviewed under abuse-of-discretion standard). The doctrine's purpose is to protect the integrity of the judicial process by prohibiting parties from "deliberately changing positions" according to the exigencies of the moment. (Internal quotation marks omitted.) *New Hampshire*, 532 U.S. at 749-50. The judicial estoppel doctrine applies when litigants take a position in a judicial proceeding, benefit from that position, and then seek to take a contrary position in a later proceeding. *Barack Ferrazzano Kirschbaum Perlman & Nagelberg v. Loffredi*, 342 Ill. App. 3d 453, 460 (2003).

¶ 20  Generally, for judicial estoppel to apply, five requirements must be shown. The party to be estopped must (1) have taken two positions (2) that are factually inconsistent (3) in separate judicial or quasi-judicial proceedings, (4) with the intent that the trier of fact accept the facts alleged as true, and (5) have succeeded in the first proceeding and received some benefit from it. *Id.* A statement under oath is not required. *Seymour v. Collins*, 2015 IL 118432, ¶ 38.

¶ 21  Here, Watts contends that State Farm's position in this case—that the filing date determines whether Montero's claim is subject to compulsory arbitration through Arbitration Forums—is contrary to a recent position that it took in a Tennessee case. Specifically, in *State Farm Fire & Casualty Co. v. Watts Water Technologies, Inc.*, No. 1750549 (D. Tenn. Nov. 5, 2015), State Farm consented to an agreed order that the Arbitration Agreement was in effect when the claim "arose and accrued (*i.e.*, the date of loss, which was January 20, 2013)"; thus, the court ordered arbitration through Arbitration Forums and noted that the case was nonsuited

by State Farm.[3] Watts argues that State Farm should be estopped from taking a contrary position here on the same issue. Furthermore, Watts contends that State Farm forfeited the judicial estoppel issue because it did not respond to it when Watts raised it in its motion to compel arbitration. Thus, Watts reasons, State Farm cannot now argue that the amendment to the Arbitration Agreement applies to the Montero claim, which accrued in 2013.

¶ 22     It has been noted that the judicial estoppel doctrine

> "does not apply to all types of inconsistency, but only inconsistency in assertions of fact. See *People v. Jones*, 223 Ill. 2d 569, 598 (2006) (State was not judicially estopped from changing its position on whether surcharge under section 5-9-1.1(c) of the Unified Code of Corrections (730 ILCS 5/5-9-1.1(c) (West 2004)) for a spinal research fund was a 'fee' rather than a 'fine' because these positions were 'legally inconsistent,' not 'factually inconsistent'); *Cress v. Recreation Services, Inc.*, 341 Ill. App. 3d 149, 172 (2003) (plaintiff was not barred from arguing that federal law preempted his state law contract claims even though he previously argued the opposite; judicial estoppel 'does not apply to legal positions')." *McNamee v. Sandore*, 373 Ill. App. 3d 636, 649-50 (2007).

Contrary to Watts's claim, although older and federal cases have applied judicial estoppel to inconsistent legal positions (see *Pepper Construction Co. v. Palmolive Tower Condominiums, LLC*, 2016 IL App (1st) 142754, ¶ 66 (citing cases)), the supreme court has rejected this position (*People v. Jones*, 223 Ill. 2d 569, 598 (2006) (judicial estoppel does not apply to positions that were "merely legally inconsistent")).

¶ 23     We conclude that judicial estoppel does not prevent State Farm from taking a position in this case concerning the interpretation of the amendment to the Arbitration Agreement—a legal question—allegedly inconsistent with the position it has taken in other cases concerning the same contract. Judicial estoppel does not apply to inconsistent legal positions.

¶ 24                              C. Arbitration Agreement

¶ 25     Next, turning to the primary issue on appeal, Watts argues that the trial court erred in denying its motion to compel arbitration pursuant to the parties' agreement with Arbitration Forums because claims that accrued prior to the amendment of the Arbitration Agreement, such as Montero's, remain subject to compulsory arbitration thereunder. For the following reasons, we disagree.

¶ 26     Interpretation of an arbitration agreement presents a question of law, which we review *de novo*. *Brown v. Delfre*, 2012 IL App (2d) 111086, ¶ 11. The standard of review is also *de novo* where the trial court's denial of a motion to compel arbitration, such as here, is based upon the interpretation of the underlying contract. *Id.* (citing *Caligiuri v. First Colony Life Insurance Co.*, 318 Ill. App. 3d 793, 800 (2000)).

¶ 27     Arbitration contracts are interpreted in the same manner and according to the same rules as are all other contracts. *J&K Cement Construction, Inc. v. Montalbano Builders, Inc.*, 119 Ill. App. 3d 663, 669 (1983). "The primary objective in construing a contract is to give effect to the intent of the parties." *Gallagher v. Lenart*, 226 Ill. 2d 208, 232 (2007). A court may resort to rules of construction only where the language of the agreement is ambiguous. *In re Estate of*

---

[3]Watts attached a copy of this order to its motion to compel arbitration.

*Chaitlen*, 179 Ill. App. 3d 287, 291 (1989). Where the terms of an agreement are clear and unambiguous, they will be given their plain and ordinary meanings, and the parties' intent must be determined from the language of the agreement alone. *Reynolds v. Coleman*, 173 Ill. App. 3d 585, 593 (1988). A contract is ambiguous when it is reasonably capable of being understood in more than one way. *Zurich Midwest, Inc. v. St. Paul Fire & Marine Insurance Co.*, 159 Ill. App. 3d 961, 963 (1987). The mere fact that the parties have different views of the meaning of the contract does not render the contract ambiguous. *Id.*

¶ 28    Illinois public policy favors arbitration. See *City of Centralia v. Natkin & Co.*, 257 Ill. App. 3d 993, 996 (1994). It also favors consistency with other states in the enforcement and interpretation of arbitration agreements. See *Bass v. SMG, Inc.*, 328 Ill. App. 3d 492, 497 (2002). However, the presumption of arbitration is overcome where an express provision in an arbitration agreement excludes certain claims from arbitration. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986).

¶ 29    Watts relies on case law that, it contends, stands for the proposition that an arbitration clause survives the contract's expiration because public policy favors arbitration and any ambiguity in a contract containing an arbitration provision must be resolved in favor of arbitration. See *Litton Financial Printing Division, a Division of Litton Business Systems, Inc. v. National Labor Relations Board*, 501 U.S. 190, 205-10 (1991) (collective bargaining agreement that contained arbitration provisions expired, and one year later, company laid off certain employees; Court noted that, absent explicit agreement that benefits continue past expiration, a postexpiration grievance arises under contract only where (1) it involves facts that arose before expiration, (2) a postexpiration action infringes a right that accrued or vested under the agreement, or (3) under normal contract-interpretation principles, the right survives expiration of the remainder of the agreement; however, Court held that layoff dispute was not arbitrable because order of layoffs was to be determined by nonconstant factors and, thus, it could not be inferred whether parties intended to freeze any particular order of layoffs or vest any contractual right as of the agreement's expiration); *Nolde Brothers, Inc. v. Local No. 358*, 430 U.S. 243, 253-55 (1977) (union's claim for severance pay pursuant to expired collective bargaining agreement was subject to contract's arbitration provisions; Court noted that, where the dispute involves provision in expired agreement, presumptions favoring arbitration must be expressly negated or negated by clear implication; further noting that an alternative holding "would permit the employer to cut off all arbitration of severance-pay claims by terminating an existing contract simultaneously with closing business operations"); *Huffman v. Hilltop Cos.*, 747 F.3d 391, 394-97 (6th Cir. 2014) (broadly worded arbitration clause in employment agreement applied after expiration of contract, even though it (and noncompete, severability, and integration clauses) was not listed in agreement's survival clause; there is a strong policy in federal arbitration statute favoring arbitration and, thus, a presumption of arbitrability; any ambiguity concerning the applicability of arbitration clause is resolved in favor of arbitration; fact that arbitration clause was not included in survival clause was not determinative, because survival clause was not an exhaustive list and, thus, this created ambiguity that court resolved in favor of arbitration); *Goshawk Dedicated Ltd. v. Portsmouth Settlement Co. I, Inc.*, 466 F. Supp. 2d 1293, 1298-1301 (N.D. Ga. 2006) (applying Georgia law and holding that novation—assignment—of insurance contract did not extinguish arbitration provision; arbitration provision controlled any dispute arising out of the performance of the original agreement; "arbitration agreements are presumed to survive the termination of a contract");

*Liberty University, Inc. v. Kemper Securities Group, Inc.*, 758 F. Supp. 1148, 1152-53 (W.D. Va. 1991) (noting that arbitration clause survives termination of a contract as to matter occurring prior to termination of contract or subject to the obligations of the contract but holding that arbitration clause at issue in expired investment-banking agreement did not survive agreement's termination; after expiration, parties embarked on a new contract that was ultimately memorialized but not executed and that contained no arbitration clause; this second contract and dispute—negligence for failure to underwrite and purchase and/or distribute securities—arose three months after expiration of first contract); *Mendez v. Trustees of Boston University*, 285 N.E.2d 446, 448 (Mass. 1972) (noting that a contract's termination does not necessarily terminate an arbitration provision therein, but holding that provision did not apply where a teacher had abandoned her employment contract and had not rendered services thereunder); *In re Primex International Corp.*, 679 N.E.2d 624, 628 (N.Y. 1997) (parties entered into three successive service agreements, of which only the first two contained an arbitration clause; during the term of the third agreement, which contained a merger clause, a dispute arose, and the defendant sued for breach of all three agreements; court held that the merger clause did not act to retroactively revoke parties' obligations to arbitrate claims arising under the first two agreements; court noted that, absent clear manifestation of a contrary intent, there is a presumption that the parties intended arbitration clause to survive termination of agreement as to subsequent disputes arising under the agreement; further noting that there was no good reason why the same principle should not apply as to arbitration arising out of antecedent contracts, when termination of those contracts is attributable to a general merger clause in a subsequent agreement).

¶ 30    We find the cases upon which Watts relies distinguishable because they involve contracts that contain arbitration clauses. Here, in contrast, the issue is the interpretation of an amendment to an existing arbitration agreement. It is not whether an arbitration clause continued to be in effect despite the expiration of an underlying contract. We must interpret the amendment and, as explained below, need not assess the presumptions that were necessary in the analyses in the foregoing cases, where the contracts were ambiguous.

¶ 31    To that end, we next determine whether the amendment is ambiguous. It provides, in relevant part: "While the use of the Property Program to resolve disputes involving product liability claims arising from an alleged defective product will no longer be compulsory as of January 1, 2015, cases *filed* prior to January 1, 2015, will *remain* in arbitration's jurisdiction and will be processed to hearing." (Emphases added.) We conclude that the amendment is not ambiguous. In our view, the amendment unambiguously reflects that the filing date, not the event date or date of loss, determines whether compulsory arbitration applies to a claim. The amendment clearly states that cases filed prior to January 1, 2015, will remain subject to compulsory arbitration. Necessarily, if a claim was filed on or after January 1, 2015, the only reading of the amendment is that the claim does not remain subject to the agreement. Here, Montero's claim was filed on April 15, 2015, and therefore, it is not subject to compulsory arbitration through Arbitration Forums.

¶ 32    We reject Watts's argument that the agreement is silent as to claims that accrued prior to the amendment's effective date and that thus there is a presumption of arbitrability. Again, in our view, the amendment is clear that, because Montero's claim was filed after January 1, 2015, it is not subject to compulsory arbitration through Arbitration Forums. We need not engage in any presumptions. We also reject Watts's contentions that it never agreed to

retroactively nullify its rights that accrued under the Arbitration Agreement. Watts ignores the fact that, by signing the Arbitration Agreement, it expressly agreed to be bound by Arbitration Forums' rules. Article 5 of the Arbitration Agreement, effective May 2, 2005, states that Arbitration Forums, as representative of the signatory companies, is authorized to "make appropriate Rules and Regulations for the presentation and determination of controversies under this Agreement." Watts does not assert, for example, that the amendment somehow exceeded Arbitration Forums' authority under the Arbitration Agreement or is otherwise invalid. Rather, it essentially argues that we should adopt its reading of the amendment. We decline to do so when the key language in the amendment is clear.

¶ 33    Watts also argues that "claims" and "cases" are distinct concepts and that, because the amendment addresses only "*cases* filed prior to January 1, 2015" (emphasis added), it is ambiguous with respect to *claims* that arose (*i.e.*, had a date of loss) before that date, such as the Montero claim, and thus there arises a presumption of arbitration with respect to the claim. This argument also fails. The amendment, again, states that "cases *filed* prior to January 1, 2015, will *remain* in arbitration's jurisdiction and will be processed to hearing." (Emphases added.) This provision is clear that the only disputes that "will be processed to hearing" are "cases *filed* prior to January 1, 2015" (emphasis added). Indeed, illustrating the fact that the date upon which a claim arose is not significant for purposes of the agreement, article 2 (addressing exclusions) of the agreement states that an excluded claim includes "any claim [for] which a lawsuit was instituted prior to, and is pending, at the time the [Arbitration] Agreement is signed." Thus, when an entity becomes a signatory, a claim for which a lawsuit has been filed and is pending is excluded from the agreement. Had Arbitration Forums intended that the date a claim arose would determine when arbitration is compulsory, the agreement would explicitly say so. However, it does not.

¶ 34    Watts also argues that this case raises the concern that parties like State Farm can avoid their obligations to arbitrate by waiting until an arbitration agreement expires. This concern, according to Watts, has been acknowledged in case law. See *Litton*, 501 U.S. at 205-10; *Nolde Brothers*, 430 U.S. at 253-55. We disagree with Watts that the scenario it outlines is precisely what occurred here. The concern raised in the cases it cites is that parties to a contract might avoid their obligations to arbitrate by waiting until a contract expires and bringing an action concerning a dispute that arose while the contract was in effect. However, the court-fashioned presumption of arbitrability forecloses such manipulation and avoidance of obligations. In any event, we do not believe that this case presents exactly such a scenario. The Arbitration Agreement and the amendment were presumably drafted exclusively by Arbitration Forums, and Watts and State Farm agreed to the agreement's terms, including to be bound by Arbitration Forums' rules. To engage in the manipulation and delay that Watts suggests, State Farm would have had to divine that Arbitration Forums was going to amend the agreement in a fashion that it deemed favorable to it with respect to Montero's claim. This is fantastical. We do acknowledge that, once Arbitration Forums announced the amendment (on November 4, 2014), State Farm theoretically could have delayed filing the Montero claim until January 1, 2015, a period of 56 days. However, Watts points to no evidence that State Farm actually manipulated its filing date for this purpose, and as in every case, State Farm had to be cognizant of the two-year limitations period for product-liability claims (735 ILCS 5/13-213(d) (West 2014)).

¶ 35    In summary, the amendment to the Arbitration Agreement unambiguously excludes Montero's claim from compulsory arbitration through Arbitration Forums.

¶ 36                          D. Motion Taken With the Case

¶ 37    In a motion we ordered taken with this case, Watts moves to strike the affidavit and declaration of Timothy McKernan that State Farm included in the appendix to its brief. The affidavit, dated October 8, 2015, and submitted to a California trial court in *Neighborhood Spirit Property & Casualty Co. v. Watts Regulator Co.*, No. 8:15-CV-00199 DOC (C.D. Cal. Nov. 2, 2015), states that McKernan is the manager of quality, training, and arbitration rules for Arbitration Forums and that he oversees the application of the arbitration agreements and rules governing disputes between signatory companies. Addressing the arbitration agreement in that case (which is presumably identical to the one at issue here), McKernan averred that no Arbitration Forum rules "support the position that the date of loss dictates whether the product liability dispute falls within the jurisdiction of Arbitration Forums, Inc." He also averred that Arbitration Forums has no jurisdiction over claims filed after January 1, 2015, unless both parties consent.

¶ 38    In its motion, Watts argues that McKernan's affidavit consists of his interpretation of the Arbitration Agreement here and was also submitted in two foreign cases between Farmers Insurance and Watts, where State Farm was not a party. Watts also contends that State Farm did not submit the affidavit to the trial court in this case. Watts argues that, because the affidavit was not submitted to the trial court, is mentioned merely in a footnote in State Farm's brief, and addresses the key issue in this case (*i.e.*, interpretation of the Arbitration Agreement), it is inappropriate and should be stricken.[4]

¶ 39    State Farm responds that this court may take judicial notice of affidavits filed in collateral actions, that McKernan's/Arbitration Forums' position on the interpretation of the agreement is essential to this case, that Watts's motion improperly argues the merits of its appeal, and that Watts was aware of the affidavit in the trial court and did not disclose it.

¶ 40    Pursuant to Illinois Rule of Evidence 201(b) (eff. Jan. 1, 2011), we may take judicial notice of facts that are "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." See also *People v. Crawford*, 2013 IL App (1st) 100310, ¶ 118 n.9 ("[W]e may take judicial notice of information on a public website, even where the information does not appear in the record."); *Metropolitan Life Insurance Co. v. American National Bank & Trust Co.*, 288 Ill. App. 3d 760, 764 (1997) (appellate court may take judicial notice of public documents that are included in the records of other courts). We may take judicial notice of readily verifiable facts if doing so will aid the court in the efficient disposition of a case, even if the parties did not seek judicial notice in the trial court. *Aurora Loan Services, LLC v. Kmiecik*, 2013 IL App (1st) 121700, ¶ 37 (citing *Department of Human Services v. Porter*, 396 Ill. App. 3d 701, 725 (2009)).

¶ 41    We deny Watts's motion to strike, and we take judicial notice of the fact that McKernan's affidavit was filed in other cases. However, as to McKernan's averments concerning the

---

[4]Watts also notes that the affidavit was submitted in a Michigan case by Farmers Insurance and that the Michigan trial court ruled in Watts's favor. *Farmers Insurance v. Watts Regulator Co.*, No. 15-005184-NP (Wayne Co., Mich., Feb. 19, 2016) (granting Watts's motion to compel arbitration).

interpretation of the Arbitration Agreement (including the amendment), we place no weight on his statements, most significantly because, as we held above, the amendment is not ambiguous; thus, we do not consider any extrinsic evidence such as the affidavit.

¶ 42                                              III. CONCLUSION

¶ 43          For the reasons stated, the judgment of the circuit court of McHenry County is affirmed.

¶ 44          Affirmed.