Danny MISLENKOV and Shoreland
Metals, Inc., Appellants,

v.

ACCURATE METAL DETINNING,
INC., and Neil B. Berg,
Appellees.

No. 45A04–0004–CV–137.

Court of Appeals of Indiana.

Jan. 23, 2001.

Duane Hartman, Patrick Lyp, Valparaiso, IN, Attorneys for Appellants.

Harold Abrahamson, John P. Reed, Hammond, IN, Attorneys for Appellees.

## OPINION

SHARPNACK, Chief Judge.

This case comes to us on interlocutory appeal. Danny Mislenkov and Shoreland Metals, Inc. ("Shoreland") appeal the trial court's denial of their motion to dismiss the complaint of Accurate Metal Detinning, Inc. and Neil B. Berg (collectively, "Accurate Metal"). Mislenkov and Shoreland raise one issue, which we restate as whether the trial court erred when it denied their motion to dismiss. We affirm.

The relevant facts follow. Mislenkov is the developer and owner of a patented process for removing tin from tin-coated metals. Accurate Metal engages in the business of removing tin from copper, a process known as "detinning." Prior to June 1997, Mislenkov had worked for Accurate Metal for approximately eighteen months. On or about June 1, 1997, the employment relationship between Mislenkov and Accurate Metal was terminated. On June 13, 1997, Mislenkov and Berg, who was acting as president of Accurate Metal, signed an employment agreement. The agreement contained an arbitration clause that provided, in relevant part, that "[a]ny controversy or claim arising out of or relating to this Agreement shall be settled by arbitration. . . ." Record, p. 31. It is unclear whether Mislenkov actually worked for Accurate Metal under the June 13, 1997, employment agreement.

Accurate Metal subsequently filed suit against Mislenkov and Shoreland, asserting that while Mislenkov had been employed at Accurate Metal, and prior to termination of his employment on or about June 1, 1997, he "devoted a substantial portion of his time and efforts . . . to purloining [Accurate Metal's] technology and customers, and to the establishment . . . of his own separate and distinct competing business, . . . [namely] Shoreland Metals, Inc." Record, pp. 10–11. Mislenkov and Shoreland responded by filing a motion to dismiss pursuant to Ind. Trial Rule 12(B)(1), asserting that the trial court lacked subject matter jurisdiction over Accurate Metal's claims because Mislenkov and Accurate Metal had agreed in the June 13, 1997, agreement to submit all employment-related claims to arbitration. The trial court denied Mislenkov and Shoreland's motion to dismiss, holding that "the actions complained of do not fall within the purview of the arbitration clause." Record, p. 64. The trial court subsequently certified its ruling on the arbitration issue for interlocutory appeal.

When ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court may weigh evidence and resolve factual disputes. *Walters v. Modern Aluminum*, 699 N.E.2d 671, 673 (Ind. Ct.App.1998), *trans. denied.* The trial court may also consider the pleadings, affidavits, and any other evidence submitted. *Id.* Generally, the burden of proving that the court does not have jurisdiction rests with the opponent of jurisdiction. *Id.* On appeal, we accept as true the facts as set forth in the complaint. *Group Dekko Serv. LLC v. Miller*, 717 N.E.2d 967, 968 (Ind. Ct.App.1999), *reh'g denied.*

Here, Mislenkov and Shoreland assert that the trial court lacked subject matter jurisdiction over Accurate Metal's claims because the alleged harm occurred while Mislenkov was working for Accurate Metal, and because Accurate Metal had agreed to submit all claims arising out of Mislenkov's employment to arbitration.

A party seeking to compel arbitration must satisfy a two-pronged burden of proof. First, the party must demonstrate the existence of an enforceable agreement to arbitrate the dispute. *Wilson Fertilizer & Grain, Inc. v. ADM Milling Co.*, 654 N.E.2d 848, 849 (Ind.Ct.App. 1995), *trans. denied.* Second, the party must prove that the disputed matter is the type of claim that the parties agreed to arbitrate. *Id.* Once the court is satisfied that the parties contracted to submit their dispute to arbitration, the court is required by statute to compel arbitration. *See* Ind. Code § 34–57–2–3(a); *Homes By Pate, Inc. v. DeHaan*, 713 N.E.2d 303, 306 (Ind. Ct.App.1999). When determining whether the parties have agreed to arbitrate a dispute, we apply ordinary contract principles governed by state law. *St. John Sanitary Dist. v. Town of Schererville*, 621 N.E.2d 1160, 1162 (Ind.Ct.App.1993). In addition, "[w]hen construing arbitration agreements, every doubt is to be resolved in favor of arbitration," and the "parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the

language used." *Id.* (quoting *Ziegler v. Whale Sec. Co.*, 786 F.Supp. 739, 741 (N.D.Ind.1992)). However, parties are only bound to arbitrate those issues that by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication. *International Bhd. of Elec. Workers, Local 1400 v. Citizens Gas & Coke Util.*, 428 N.E.2d 1320, 1325 (Ind.Ct.App.1981) (quoting *Board of Educ. v. Champaign Educ. Ass'n*, 15 Ill.App.3d 335, 340, 304 N.E.2d 138, 142 (1973)).

Turning to the first prong of the analysis, there is no dispute that the employment agreement between Mislenkov and Accurate Metal, including the arbitration clause, is enforceable as to those two parties. Shoreland, however, was not a party to the employment agreement. Generally, only those who are parties to a contract or those in privity with a party have the right to enforce the contract. *Indiana Gaming Co. v. Blevins*, 724 N.E.2d 274, 277 (Ind.Ct.App.2000), *trans. denied.* Privity has been defined as "mutual or successive relationships to the same right of property, or an identification of interest of one person with another as to represent the same legal right." *Riehle v. Moore*, 601 N.E.2d 365, 371 (Ind.Ct.App. 1992) (quoting BLACK'S LAW DICTIONARY 1199 (6th ed.1990)), *trans. denied.* The record does not demonstrate that Shoreland had a mutual or successive relationship with Mislenkov with regard to property or that their interests are so identical as to represent the same legal right. Consequently, Shoreland is not a privy of Mislenkov. *See id.* Because Shoreland was not a party to the employment agreement and is not in privity with Mislenkov, Shoreland is not entitled to compel arbitration of Accurate Metal's claims against it by means of the arbitration clause. *See Angell Enter., Inc. v. Abram & Hawkins Excavating Co.*, 643 N.E.2d 362, 365 (Ind. Ct.App.1994) (determining that a group of subcontractors could not use an arbitration clause in a contract between a general

contractor and an owner to compel the owner to submit its claims against the subcontractors to arbitration because the subcontractors were not parties to the agreement), *on reh'g.* Consequently, we affirm the trial court's judgment as it applies to Shoreland.[1]

 Turning to the second prong of the analysis, we must determine whether Accurate Metal's claims against Mislenkov are the type of claim that the parties agreed to arbitrate. *Wilson Fertilizer & Grain, Inc.,* 654 N.E.2d at 849. A review of our rules of contract interpretation is necessary. When reviewing the trial court's interpretation of a contract, we view the contract in the same manner as the trial court. *Exide Corp. v. Millwright Riggers, Inc.,* 727 N.E.2d 473, 478 (Ind.Ct. App.2000), *trans. denied.* The court should attempt to determine the intent of the parties at the time the contract was made by examining the language used to express their rights and duties. *Id.* Words used in a contract are to be given their usual and common meaning unless, from the contract and the subject matter thereof, it is clear that some other meaning was intended. *Id.* at 478–479. Words, phrases, sentences, paragraphs, and sections of a contract cannot be read alone. *Id.* at 479. The entire contract must be read together and given meaning, if possible. *Id.*

In this case, Accurate Metal's complaint asserts that, prior to Mislenkov's termination on or about June 1, 1997, he "devoted a substantial portion of his time and efforts during said employment to . . . purloining [Accurate Metal's] technology and customers, and to the establishment . . . of his own separate and distinct competing business, [namely] Shoreland Metals, Inc."

Record, pp. 10–11. Thus, Accurate Metal is accusing Mislenkov of stealing its trade secrets throughout the course of his employment. However, Mislenkov and Accurate Metal did not sign the employment agreement on which Mislenkov relies until June 13, 1997, which was after Mislenkov had been terminated. Thus, the crucial question is whether the agreement governs prior wrongdoing by Mislenkov. The employment agreement provides, in relevant part:

1. RELEASE. Any prior agreements and provisions within the agreements between [Accurate Metal] and [Mislenkov] are terminated at this date. . . . Both parties are released from any and all of the responsibilities and duties under the prior agreements. The "Employment Agreement and Release" shall be the sole contract which may be enforced against the parties. . . .

\* \* \* \* \*

9. ARBITRATION CLAUSE. Any controversy or claim arising out of or relating to this Agreement shall be settled by arbitration in Valparaiso, Indiana in accordance with the rules of the American Arbitration Association and judgment upon the award rendered by the arbitrators may be entered in court having jurisdiction thereof.

Record, pp. 30–31.

 Thus, the arbitration provision provides that the parties must arbitrate disputes arising out of or relating to the *agreement,* not to the parties' employment relationship in general. By its plain language, the agreement invalidates all prior employment contracts between Accurate Metal and Mislenkov and provides that it

---

1. Mislenkov and Shoreland contend that Accurate Metal is challenging the applicability of the employment agreement to Shoreland for the first time on appeal, and has therefore waived the issue. We disagree. The issue of whether the employment agreement applies to Shoreland is determinative of the trial court's subject matter jurisdiction over Accu-

rate Metal's claims against Shoreland, and challenges to subject matter jurisdiction cannot be waived. *See Schafer v. Sellersburg Town Council,* 714 N.E.2d 212, 215 (Ind.Ct. App.1999), *trans. denied.* Because subject matter jurisdiction cannot be waived, we must address the issue even if the parties did not properly raise it. *See id.*

is "the sole contract which may be enforced against the parties," but that does not demonstrate that it applies retroactively. Record, p. 30. We are bound to resolve doubts in favor of arbitration, but Accurate Metal's claims of pre-agreement wrongdoing do not reasonably fit within the specific language the parties used in the agreement. *Cf. St. John Sanitary Dist.*, 621 N.E.2d at 1163 (determining that a sewer company's challenge to a municipality's rate increase was "at the heart" of the parties' contract and was subject to arbitration). Consequently, Accurate Metal's claims against Mislenkov do not fall within the purview of the arbitration clause, and the judgment of the trial court must be affirmed with regard to Mislenkov as well.[2]

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

BAKER and VAIDIK, JJ., concur.

[2.] It appears from the record that Mislenkov and Accurate Metal had signed a prior employment agreement that also contained an arbitration clause. However, that agreement has not been included in the record, and no argument that it applies has been made, so we cannot consider whether Accurate Metal's claims would be subject to arbitration pursuant to that agreement's terms.