

**FILED**
Dec 27 2016, 10:14 am
**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

John D. Papageorge
Jeffrey D. Stemerick
Taft Stettinius & Hollister, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Brad M. Gordon
Grotefeld, Hoffman, Schleiter,
Gordon, Ochoa, & Evinger, LLP
Chicago, Illinois

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Watts Water Technologies, Inc., *Appellant-Defendant*, | December 27, 2016 |
| | Court of Appeals Case No. 45A04-1604-CT-831 |
| v. | Appeal from the Lake Superior Court |
| State Farm Fire & Casualty Co. a/s/o Richard Lucka, *Appellee-Plaintiff*. | The Honorable Diane Kavadias Schneider, Judge |
| | Trial Court Cause No. 45D11-1507-CT-125 |

**Brown, Judge.**

Watts Water Technologies, Inc. ("Watts") appeals the trial court's order denying its motion to compel arbitration. Watts raises three issues which we consolidate and restate as whether the trial court erred in denying its motion. We affirm.

## Facts and Procedural History

Watts and State Farm Fire & Casualty, Co. ("State Farm") were signatories to a Property Subrogation Arbitration Agreement (the "Arbitration Agreement"), which provided in part:

> By signing this Agreement, the company accepts and binds itself to the following:
>
> **Article First**
> *Compulsory Provisions*
>
> Signatory companies must forego litigation and submit any personal, commercial, or self-insured property subrogation claims to Arbitration Forums, Inc. (herein after referred to as AF).
>
> * * * * *
>
> **Article Fourth**
> *Non-Compulsory Provisions*
>
> The parties may, with written consent, submit a claim:
>
> > (a) that exceeds this forum's monetary limit
> > (b) where a non-signatory wants to participate.
>
> Once a company gives written consent, all Articles and Rules of this forum are applicable, and the company may not revoke its consent.
>
> * * * * *

**Article Fifth**
*AF's Function and Authority*

AF, representing the signatory companies, is authorized to:

  (a) make appropriate Rules and Regulations for the presentation and determination of controversies under this Agreement;
  (b) determine the location, and the means by which, arbitration cases are heard;
  (c) determine qualification criteria and provide for the selection and appointment of arbitrators;
  (d) establish fees;
  (e) invite other insurance carriers, noninsurers, or self-insureds to participate in this arbitration program, and compel the withdrawal of any signatory for failure to conform to the Agreement or the Rules issued thereunder.

* * * * *

**Article Sixth**
*Withdrawals*

Any signatory company may withdraw from this Agreement by notice in writing to AF. Such withdrawal will become effective sixty (60) days after receipt of such notice except as to cases then pending before arbitration panels. The effective date of withdrawal as to such pending cases shall be upon final compliance with the finding of the arbitration panel on those cases.

Appellant's Appendix at 41-42.

[3] In November 2014, Arbitration Forums gave notice to the parties that it intended to amend the Arbitration Agreement. The notification stated:

**Effective January 1, 2015, the following changes to AF's Property Program will be implemented:**

A new exclusion to Article Second of the Property Subrogation Arbitration Agreement to read:

- *"No company shall be required, without its written consent, to arbitrate any claim or suit if: (i) it is a product liability claim arising from an alleged defective product."*

\* \* \* \* \*

While the use of the Property Program to resolve disputes involving product liability claims arising from an alleged defective product will no longer be compulsory as of January 1, 2015, cases filed prior to January 1, 2015, will remain in arbitration's jurisdiction and will be processed to hearing.

*Id.* at 74.

[4] Effective January 1, 2015, the amended Arbitration Agreement (the "Amended Arbitration Agreement") provided:

**Article Second**
*Exclusions*

No company shall be required, without its written consent, to arbitrate any claim or suit if:

\* \* \* \* \*

(i) it is a product liability claim arising from an alleged defective product.

*Id.* at 72.

[5] On July 23, 2015, State Farm a/s/o Richard Lucka filed a complaint against Watts alleging that Lucka purchased a water heater with a Watts brand connector and that the connector failed on November 30, 2014, causing water damage to Lucka's home and property. The complaint alleged: Count I, "Products Liability – Defective Manufacturing;" Count II, "Products Liability – Defective Design;" Count III, "Products Liability – Negligent Manufacturing;" Count IV, "Negligent Design;" and Count V, "Breach of Implied Merchantability." *Id.* at 11-13 (capitalization removed). State Farm alleged that it was subrogated to the rights of the insured, Lucka, to the extent of its payments to or for Lucka. On October 28, 2015, State Farm filed an amended complaint correcting the address where the incident occurred.

[6] On December 17, 2015, Watts filed a Motion to Dismiss or, In the Alternative, to Stay Proceedings and Compel Arbitration. On March 22, 2016, the court denied Watts's motion. Specifically, the order states:

**Findings of Facts**

    1. [State Farm] filed a claim against [Watts] for, among other things, a product liability claim.

    2. This cause of action stems from a defective Watts water heater connector that failed resulting in water damage on November 30, 2014 to the home of Richard Lucka, State Farm insured.

    3. The water damaged Mr. Lucka's home and property resulting in State Farm paying $27,805.00 under his insurance policy.

4. An engineer inspected the Watts water heater connector and determined it was defective on January 7, 2015.

5. State Farm did not make a final payment to Mr. Lucka until January 29, 2015.

6. State Farm and Watts are members of Arbitration Forums, Inc. (hereinafter referred to as AF).

7. AF has the ability to []make appropriate Rules and Regulations for the presentation and determination of controversies under an agreement with AF.

8. AF exercised their right and changed the articles of their Property Subrogation Arbitration Agreement that added the exclusion and now reads, "No company shall be required, without its written consent, to arbitrate any claim or suit if: (i) it is a product liability claim arising from an alleged defective product."

9. This new exclusion was effective as of January 1, 2015.

### Conclusions of Law

10. The determination of whether an enforceable agreement to arbitrate exists is a matter of contract interpretation, and most importantly, a matter of the parties' intent. *Precision Homes of Indiana, Inc. v. Pickford*, 844 N.E.2d 126 (Ind. Ct. App. 2006)[, *trans. denied*].

11. State law governs the initial question of whether the parties entered into a valid agreement to arbitrate. *Mislenkov v. Accurate Metal Detinning, Inc.*, 743 N.E.2d 286 (Ind. Ct. App. 2001).

12. A court may order arbitration of a particular dispute only where the court is satisfied that both parties agreed to arbitrate that dispute. *Granite Rock Co. v. Int'l Brotherhood of Teamsters, et al.*, 130 S. Ct. 2847 (2010).

13. "An agreement to arbitrate is a matter of contract: 'it is a way to resolve those disputes – but only those disputes – that the parties have agreed to submit to arbitration." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000).

14. State Farm and Watts were both members of AF and gave AF the ability to make rules and regulations as AF saw fit.

15. AF wrote a notification about a new policy was [sic] sent in November of 2014. The new exclusion was to be effective January 1, 2015.

16. The notification draws the attention of the parties to understand that, "While the use of the Property Program to resolve disputes involving product liability claims arising from an alleged defective product will no longer be compulsory as of January 1, 2015, cased [sic] filed prior to January 1, 2015, will remain in arbitration's jurisdiction and will be processed to hearing."

17. This statement by AF makes the filing date the triggering event for the new policy not the date of the injury.

18. As a part of the AF agreement, participants had a way to withdraw from the services of AF.

19. Neither, State Farm nor Watts withdrew from the AF agreement. By not withdrawing from participating in AF, State Farm and Watts subjected themselves to the new exclusion.

*Id.* at 7-9.

### Discussion

The issue is whether the trial court erred in denying Watts's motion to compel arbitration.[1] Watts argues that neither the Amended Arbitration Agreement nor Arbitration Forums' notice terminated its right to arbitrate State Farm's property subrogation claim that accrued prior to January 1, 2015. Watts asserts that Arbitration Forums is a nonparty to the Arbitration Agreement and that its "take on the subject is simply not relevant to the intent of Watts or State Farm." Appellant's Brief at 16. Watts contends that this Court should avoid an interpretation of the Arbitration Agreement that would render State Farm's agreement to arbitrate illusory. It argues that State Farm is collaterally estopped from relitigating the issue of whether the Arbitration Agreement in effect when its claim accrued governs the arbitrability of the claim. Watts also asserts that State Farm did not allege a product liability claim subject to the product liability exclusion.

State Farm argues that Arbitration Forums, pursuant to the rule-making authority expressly granted to it by Watts, clearly made the date of *filing* determinative. State Farm contends that by carving out an exception for only claims which had been filed prior to January 1, 2015, the only reasonable

---

[1] On July 25, 2016, Watts filed a motion to strike material not in the record. Specifically, it argued that the Declaration of Timothy McKernan, which State Farm included in its Addendum, was not filed in the trial court and is not part of the record on appeal. By separate order, we grant Watts's motion to strike.

construction of Arbitration Forums' amendment is that the exclusion would apply to all other unfiled claims, notwithstanding whether a party could have filed a claim in 2014 or earlier. It argues that to extend the Amended Arbitration Agreement to include product defect cases filed in 2015 would contradict the plain language of the rule and the intentions of Arbitration Forums and the signatories it represented as expressed in that language. It further contends that Watts's argument that Arbitration Forums' own rule is extrinsic evidence is mistaken because the Arbitration Agreement expressly authorized all rules and regulations issued by Arbitration Forums. State Farm also argues that Watts has no vested right to arbitration of any matter until a claim is formally filed and that Watts had only a contingent right to arbitrate claims based on the parties' mutual status as signatories. It states that the Amended Arbitration Agreement is not illusory because a disputed claim filed prior to a revision of the rules must be arbitrated with Arbitration Forums, and that it alleged a product liability claim subject to the product liability exclusion.

[9] Our standard of review in this case is *de novo*. *Showboat Marina Casino P'ship v. Tonn & Blank Constr.*, 790 N.E.2d 595, 597 (Ind. Ct. App. 2003) (citing *Mislenkov v. Accurate Metal Detinning, Inc.*, 743 N.E.2d 286, 290 (Ind. Ct. App. 2001)). It is well settled that Indiana recognizes a strong policy favoring enforcement of arbitration agreements. *Homes By Pate, Inc. v. DeHaan*, 713 N.E.2d 303, 306 (Ind. Ct. App. 1999). Nevertheless, arbitration is a matter of contract, and a party cannot be required to submit to arbitration unless the party has agreed to do so. *Id.*

Under Indiana contract law, the party seeking to compel arbitration has the burden of demonstrating the existence of an enforceable arbitration agreement. *Showboat Marina Casino P'ship*, 790 N.E.2d at 597-598 (citing *Wilson Fertilizer & Grain, Inc. v. ADM Milling Co.*, 654 N.E.2d 848, 849 (Ind. Ct. App. 1995), *trans. denied*). In determining whether the parties have agreed to arbitrate a particular dispute, the court "will decide whether the dispute, on its face, is covered by the language of the arbitration provision." *St. John Sanitary Dist. v. Town of Schererville*, 621 N.E.2d N.E.2d 1160, 1162 (Ind. Ct. App. 1993). When determining whether the parties have agreed to arbitrate a dispute, we also apply ordinary contract principles governed by state law. *Showboat Marina Casino P'ship*, 790 N.E.2d at 598 (citing *Mislenkov*, 743 N.E.2d at 289 (citing *St. John Sanitary Dist.*, 621 N.E.2d 1160 at 1162)). "In addition, '[w]hen construing arbitration agreements, every doubt is to be resolved in favor of arbitration,' and the 'parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the language used.'" *Id.* (quoting *Mislenkov*, 743 N.E.2d at 289 (citing *St. John Sanitary Dist.*, 621 N.E.2d at 1162)). However, parties are only bound to arbitrate those issues that by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication. *Id.*

Whether the parties agreed to arbitrate any disputes is a matter of contract interpretation, and most importantly, a matter of the parties' intent. *MPACT Const. Grp., LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 906 (Ind. 2004). "Courts in Indiana have long recognized the freedom of parties to enter

into contracts and have presumed that contracts represent the freely bargained agreement of the parties." *Id.* (quoting *Trimble v. Ameritech Publ'g, Inc.,* 700 N.E.2d 1128, 1129 (Ind. 1998)). Consequently, imposing on parties a policy favoring arbitration before determining whether they agreed to arbitrate could frustrate the parties' intent and their freedom to contract. *Id.* "The Supreme Court has made this clear – 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Id.* (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 648, 106 S. Ct. 1415 (1986)).

[12] To the extent Watts asserts that Arbitration Forums' notice regarding the amendment is extrinsic or that Arbitration Forums did not have the authority to amend the Arbitration Agreement to provide for the product liability exclusion, we disagree. Watts agreed to the terms of the Arbitration Agreement, and Article Fifth of the Arbitration Agreement stated that Arbitration Forums, "representing the signatory companies, is authorized to . . . make appropriate Rules and Regulations for the presentation and determination of controversies under this Agreement . . . ." Appellant's Appendix at 42. We conclude that the notice and amendment fall within Arbitration Forums' authority.

[13] As for Watts's argument that the language of the amendment did not remove the requirement of arbitration from State Farm's claim, we observe that the notice from Arbitration Forums regarding the amendment states: "While the use of the Property Program to resolve disputes involving product liability claims arising from an alleged defective product will no longer be compulsory

as of January 1, 2015, cases *filed* prior to January 1, 2015, will *remain* in arbitration's jurisdiction and will be processed to hearing." *Id.* at 74 (emphasis added). Further, the Amended Arbitration Agreement, which was effective January 1, 2015, provided that "[n]o company shall be required, without its written consent, to arbitrate *any claim or suit* if . . . it is a product liability claim arising from an alleged defective product." *Id.* at 72 (emphasis added). We cannot say that the language in the notice or amendment is ambiguous. The notice and Amended Arbitration Agreement indicate that the filing date of a claim or suit determines whether compulsory arbitration applies to the claim or suit. State Farm filed its complaint against Watts on July 23, 2015. Accordingly, it is not subject to compulsory arbitration. *See State Farm Fire & Cas. Co. v. Watts Regulator Co.* (filed September 29, 2016), Ill. App. Ct. No. 2-16-0275, slip op. at 7 (addressing an event in which Cecilia Montero's home sustained water damage on September 7, 2013, the Arbitration Agreement, and the November 2014 notice regarding the amendment effective January 1, 2015, and holding that "[t]he amendment clearly states that cases filed prior to January 1, 2015, will remain subject to compulsory arbitration. Necessarily, if a claim was filed on or after January 1, 2015, the only reading of the amendment is that the claim does not remain subject to the agreement. Here, Montero's claim was filed on April 15, 2015, and, therefore, it is not subject to compulsory arbitration through Arbitration Forums").

[14]    Watts cites *Homes by Pate, Inc. v. DeHaan*, 713 N.E.2d 303 (Ind. Ct. App. 1999), *Chesterfield Mgmt., Inc. v. Cook*, 655 N.E.2d 98 (Ind. Ct. App. 1995), *reh'g denied*,

*trans. denied*, and *Nolde Bros., Inc. v. Local No. 358*, 430 U.S. 243 (1977), for the assertion that State Farm's duty to arbitrate survived the amendment. The arbitration provisions addressed in those cases did not include language providing an entity with the authority to "make appropriate Rules and Regulations for the presentation and determination of controversies under this Agreement," language to which the parties in this case expressly agreed upon. Appellant's Appendix at 42, 73. Nor do those cases involve such an entity providing for a property liability exclusion similar to the language in the notice and Amended Arbitration Agreement. *See Homes by Pate, Inc.*, 713 N.E.2d at 305-306, 309 (addressing a residential building contract and two-year warranty which required arbitration with respect to disputes as to whether particular repairs were covered by the warranty and holding that a logical reading of the warranty led to the conclusion that, so long as a defect occurred within the two-year period of warranty coverage, any dispute concerning that coverage must be arbitrated); *Chesterfield Mgmt. Inc.*, 655 N.E.2d at 102 (addressing an arbitration provision in a lease and observing that the lease's arbitration clause provided in part that "[a]ny dispute under any of the paragraphs of this Lease shall be settled by arbitration"); *Nolde Bros., Inc.*, 430 U.S. at 244, 252-254, 97 S. Ct. at 1068, 1072-1073 (addressing whether a party to a collective-bargaining contract may be required to arbitrate a contractual dispute over severance pay pursuant to an arbitration clause of that agreement even though the dispute, although governed by the contract, arose after its termination, noting that the parties drafted their broad arbitration clause against a backdrop of well-established federal labor policy favoring arbitration, and holding "even though the parties

could have so provided, there is nothing in the arbitration clause that expressly excludes from its operation a dispute which arises under the contract, but which is based on events that occur after its termination. The contract's silence, of course, does not establish the parties' intent to resolve post-termination grievances by arbitration. But in the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract").

[15] With respect to Watts's argument that State Farm's duty to arbitrate is illusory, we observe that Watts does not argue that Arbitration Forums' duty under the Amended Arbitration Agreement is illusory. Article Sixth of the Agreement allows any signatory to withdraw from the Agreement by notice in writing to Arbitration Forums. In addition, other categories of damage to property remain subject to compulsory arbitration under the Amended Arbitration Agreement. The Amended Agreement and the notice require that State Farm arbitrate certain claims asserted before January 1, 2015. The fact that product liability claims are not subject to compulsory arbitration under the Amended Agreement does not render the agreement illusory. *See Watts Regulator Co.* (filed September 29, 2016), Ill. App. Ct. No. 2-16-0275, slip op. at 8 (rejecting Watts's argument that State Farm could avoid their obligations to arbitrate).

[16] As for Watts's assertion that State Farm is collaterally estopped from relitigating the issue of whether the Arbitration Agreement in effect when its claim accrued governs the arbitrability of the claim, we note that issue preclusion, or collateral estoppel, bars subsequent relitigation of the same fact

or issue where that fact or issue was necessarily adjudicated in a former lawsuit and that same fact or issue is presented in a subsequent suit. *Nat'l Wine & Spirits, Inc. v. Ernst & Young, LLP*, 976 N.E.2d 699, 704 (Ind. 2012) (citing *Hayworth v. Schilli Leasing, Inc.*, 669 N.E.2d 165, 167 (Ind. 1996)), *reh'g denied*, *cert. denied*, 133 S. Ct. 2780 (2013). Where, as here, a defendant seeks to prevent a plaintiff from asserting a claim that the plaintiff has previously litigated and lost, the use has been termed "defensive" collateral estoppel. *Small v. Centocor, Inc.*, 731 N.E.2d 22, 28 (Ind. Ct. App. 2000), *reh'g denied*, *trans. denied*. There are three requirements for the doctrine of collateral estoppel to apply: (1) a final judgment on the merits in a court of competent jurisdiction; (2) identity of the issues; and (3) the party to be estopped was a party or the privity of a party in the prior action. *Nat'l Wine & Spirits*, 976 N.E.2d at 704. Furthermore, two additional considerations are relevant in deciding whether the defensive use of collateral estoppel is appropriate: "whether the party against whom the judgment is pled had a full and fair opportunity to litigate the issue, and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel." *Id.* (quoting *Small*, 731 N.E.2d at 28).

[17] The parties cite to various trial court orders from multiple states. Some are in favor of Watts, and others favor State Farm. Specifically, Watts cites to trial court orders from Tennessee, Georgia, Nevada, and Utah. State Farm cites to trial court orders from Georgia, Massachusetts, and Minnesota. As these orders and decisions produce different results, and under the circumstances

presented, we cannot say it would be fair to permit the use of collateral estoppel by Watts.

[18] We next turn to Watts's argument that State Farm did not allege a product liability claim subject to the product liability exclusion. Watts cites to the Indiana Products Liability Act, Ind. Code §§ 34-20, and asserts that State Farm's claims do not constitute product liability claims because State Farm did not allege "physical harm" or "sudden, major damage" to Lucka's property or home. Appellant's Brief at 24-25. Watts asserts that State Farm's complaint alleging that the damage happened "[o]n or about" November 30, 2014, suggests gradually evolving damage and not the physical harm necessary for product liability claims. *Id.* (quoting Appellant's Appendix at 18). Watts also argues that the complaint does not allege the nature of any defect in Watts's connector or the nature of the risk the defect presented. Watts also asserts that a broad interpretation of the product liability exclusion would swallow the general rule requiring arbitration.

[19] State Farm argues that nowhere is a signatory required to comply with any particular state's pleading standard to meet the exception and that whether or not the claim is subject to dismissal under Indiana state law has no bearing upon the interpretation of the arbitration agreements. State Farm also argues that Watts failed to raise any of the alleged pleading deficiencies to the trial court and has waived this issue. In reply, Watts contends that the trial court expressly ruled that State Farm's claim was a product liability claim and that it did not waive the argument.

[20]     Even assuming that Watts did not waive this issue and that an examination of Indiana statutory law regarding products liability is necessary, we cannot say that reversal is warranted. Ind. Code § 34-20-1-1 governs the applicability of the article addressing product liability actions and provides:

> This article governs all actions that are:
>
> > (1) brought by a user or consumer;
> > (2) against a manufacturer or seller; and
> > (3) for physical harm caused by a product;
>
> regardless of the substantive legal theory or theories upon which the action is brought.

Ind. Code § 34-6-2-105 provides that "'[p]hysical harm', for purposes of IC 34-20, means bodily injury, death, loss of services, and rights arising from any such injuries, as well as sudden, major damage to property," and "[t]he term does not include gradually evolving damage to property or economic losses from such damage."

[21]     Ind. Code § 34-20-2-1 is titled "Grounds," and addresses the grounds for a product liability action as follows:

> Except as provided in section 3 of this chapter, a person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to the user's or consumer's property is subject to liability for physical harm caused by that product to the user or consumer or to the user's or consumer's property if:

(1) that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition;

(2) the seller is engaged in the business of selling the product; and

(3) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which the product is sold by the person sought to be held liable under this article.

[22] State Farm alleged: Count I, "Products Liability – Defective Manufacturing;" Count II, "Products Liability – Defective Design;" Count III, "Products Liability – Negligent Manufacturing;" and Count IV, "Negligent Design." Appellant's Appendix at 18-20. State Farm's amended complaint also alleged that Watts manufactured the connector and/or its components, that the connector failed causing water damage resulting in damages to Lucka's property, that damages of $27,805 were incurred, and that the connector and/or its components were defective and unreasonably dangerous at the time it left Watts. We cannot say that State Farm's claims did not fall within the exclusion in the Amended Arbitration Agreement which stated: "No company shall be required, without its **written consent**, to arbitrate any claim or suit if . . . it is a product liability claim arising from an alleged defective product." Appellant's Appendix at 72.

### *Conclusion*

[23] For the foregoing reasons, we affirm the trial court's order denying Watts's motion to compel arbitration.

[24] Affirmed.

Robb, J., and Mathias, J., concur.