

FILED

Nov 21 2017, 9:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

J. Thomas Vetne
Jones Obenchain, LLP
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Dennis F. Cantrell
Keith D. Mundrick
Cantrell, Strenski & Mehringer, LLP
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Progressive Southeastern
Insurance Co.,

*Appellant-Plaintiff,*

v.

Empire Fire and Marine
Insurance Co.,

*Appellee-Defendant.*

November 21, 2017

Court of Appeals Case No.
32A05-1706-PL-1235

Appeal from the Hendricks
Superior Court

The Honorable Karen M. Love,
Judge

Trial Court Cause No.
32D03-1603-PL-38

**Robb, Judge.**

# Case Summary and Issue

[1] Maria Rivera took her vehicle, which was insured by Progressive Southeastern Insurance Company ("Progressive"), to Terry Lee Honda for repairs. Terry Lee Honda provided Rivera with a courtesy car and requested she sign a "Rental Agreement for a Temporary Substitute Vehicle" ("Courtesy Car Agreement"). Terry Lee Honda insures its vehicles through Empire Fire and Marine Insurance ("Empire"). After Rivera had an accident in the courtesy car, Empire paid for the repairs and then sought to collect from Progressive, alleging Progressive was the primary insurer pursuant to the Courtesy Car Agreement. In turn, Progressive claimed that the Courtesy Car Agreement was an invalid rental agreement and the courtesy car was a loaned vehicle under Indiana law.

[2] Progressive initiated this declaratory judgment action against Empire seeking an order stating: 1) Rivera was a permissive driver of a loaned vehicle; 2) Empire's coverage was primary; and 3) Empire's coverage must be exhausted before Progressive is obligated on any claim. In response, Empire filed a motion for arbitration pursuant to a preexisting arbitration agreement with Progressive. Progressive then filed an Amended Complaint, attempting to jettison issues subject to arbitration by asking the trial court to declare the courtesy car was a loaned vehicle under Indiana law. On cross-motions for summary judgment, the trial court concluded the Courtesy Car Agreement constituted a rental agreement and ordered any remaining dispute to arbitration.

[3]     Progressive now appeals, raising one issue for our review: whether the trial court erred in concluding the Courtesy Car Agreement constituted a rental agreement.  Concluding the trial court erred in reaching the merits of the underlying claim because the dispute is subject to compulsory arbitration, we reverse in part, affirm in part, and remand to the trial court for entry of an order directing the parties to proceed to arbitration.

# Facts and Procedural History[1]

[4]     On December 11, 2015, Rivera took her vehicle to Terry Lee Honda in Avon, Indiana, for service work.  As part of the "Honda Courtesy Car Program," Rivera was issued a Honda CR-V courtesy car to use while her vehicle was serviced.  Before receiving the courtesy car, Rivera signed a contract titled, "Rental Agreement for a Temporary Substitute Vehicle" ("Courtesy Car Agreement").  Relevant to this appeal, the Courtesy Car Agreement provided:

> 2.  Rental: Consideration; Indemnity and Warranties.  This is a contract for rental of the Vehicle.  A fee You pay Us, or Our opportunity to service or repair Your vehicle and the benefits We receive for the service/repair work, is adequate consideration for rental of the Vehicle.  We may repossess the Vehicle at Your expense without notice to You if the Vehicle is abandoned or used in violation of law or this Agreement.  You agree to indemnify Us, defend Us and hold Us harmless from all claims, liability, costs and attorney fees We incur resulting from or

---

[1] We heard oral argument in West Lafayette, Indiana in the Krannert Center for Executive Education at Purdue University on October 26, 2017.  We thank Purdue University for their generous hospitality and commend counsel for their skilled and informative oral advocacy.

arising out of this Agreement or Your use of the Vehicle. We make no warranties, express, implied or apparent, regarding the Vehicle, no warranty of merchantability and no warranty that the Vehicle is fit for a particular purpose.

* * *

4. Responsibility for Damage or Loss; Reporting to Police. You are responsible for theft of the Vehicle and damage to it whether or not You are at fault. . . .

* * *

6. Insurance. You are responsible for all damage or loss You cause to others. You agree to provide auto liability, collision and comprehensive insurance covering You, Us and the Vehicle. Your insurance is primary. If You have no auto liability insurance in effect on the date of a loss, or if We are required by law to provide liability insurance, We will provide auto liability insurance (the "Policy") that is secondary to any other valid and collectible insurance whether primary, secondary, excess or contingent. . . .

Appellant's Appendix, Vol. II at 59. The Courtesy Car Agreement provided for a daily rental rate of $35 but Terry Lee Honda neither collected the charge when Rivera signed the contract, nor did it collect the charge when Rivera returned the courtesy car. Terry Lee Honda did, however, receive $1,420 for service work paid by Rivera's vehicle warranty provider.

Prior to the events that led to this litigation, both Progressive and Empire signed a "Special Arbitration Agreement" ("Arbitration Agreement"), administered by Arbitration Forums, Inc.[2] The Arbitration Agreement provides:

> Upon settlement of a claim or suit, signatory companies must submit any unresolved disputes to Arbitration Forums, Incorporated (herein after referred to as AF) where:
>
> > (a) each has issued a policy of casualty insurance covering, or as a self-insured covers, one or more parties asserted to be legally liable for an accident, occurrence or event out of which a claim or suit arises; or
> >
> > (b) each has issued separate policies of property or casualty insurance providing, or as a self-insured provides, concurrent coverage to the same party or parties asserted to cover an accident, occurrence or event out of which a first or third party claim or suit for bodily injury or property damage arises; or
> >
> > (c) a workers compensation carrier or a self-insured seeks to recover reimbursement of workers compensation benefits from an alleged tortfeasor.

*Id.*, Vol. III at 75. Arbitration Forums, Inc., defines "settlement" as:

> Settlement – (Special Arbitration) The final disposition of a claim or suit wherein the claimant or plaintiff releases any and all

---

[2] Progressive does not dispute the existence or general enforceability of the Arbitration Agreement.

causes of action against all alleged responsible parties involved in the Special Arbitration filing. . . .

*Id*. at 86. Concurrent coverage is defined as:

> Concurrent Coverage – (Special Arbitration) Two or more policies of insurance and/or self-insureds providing coverage to the same party or parties or the same risk or risks for the same accident, occurrence, or event. Concurrent coverage includes primary/excess disputes.

*Id.* at 85.

[6] While driving the courtesy car, Rivera had an accident which caused minor damage to the vehicle. Empire made full payment for the damage, minus the deductible paid by Terry Lee Honda. Empire then sought repayment of $328.45 from Progressive, claiming Progressive was the primary insurance provider pursuant to the Courtesy Car Agreement.[3]

[7] In response, Progressive claimed the Courtesy Car Agreement was invalid because Terry Lee Honda did not comply with the statutory requirements for rental agreements found in Indiana Code section 24-4-9-5.[4] Progressive argued that because the Courtesy Car Agreement was unenforceable, the courtesy car

---

[3] Rivera's policy with Progressive included insurance for a "non-owned auto." *See* Appellant's App. Vol. II, at 37, 40.

[4] Specifically, Progressive argued that Indiana Code section 24-4-9-5 requires "charge for use of the vehicle is made at a periodic rate …" to constitute a rental agreement. Because Terry Lee Honda never collected the $35 daily rental fee provided by the Courtesy Car Agreement, Progressive alleges Terry Lee Honda failed to "charge" as required by statute.

was a loaned vehicle under Indiana Code section 27-8-9-7(b), and Empire's insurance was primary because Rivera was a permissive driver.[5]

[8] On March 24, 2016, Progressive initiated the current litigation by filing its Complaint for Declaratory Judgment, seeking an order declaring: 1) Rivera was a permissive driver of a loaned vehicle; 2) Empire's coverage was primary; and 3) Empire's coverage must be exhausted before Progressive is obligated on any claim. In response, Empire filed a motion for arbitration pursuant to the Arbitration Agreement and, in the alternative, Empire argued the Courtesy Car Agreement qualified as a rental or lease under Indiana law.

[9] Attempting to jettison issues subject to arbitration, Progressive filed an Amended Complaint asking the court to declare that the Courtesy Car Agreement between Rivera and Terry Lee Honda was, as a matter of law, a loan and not a rental or lease. Both parties moved for summary judgment.

[10] Following a hearing on April 7, 2017, the trial court issued its findings of fact and conclusions thereon granting summary judgment in favor of Empire and denying Progressive's motion for summary judgment. The trial court concluded the Courtesy Car Agreement was a rental agreement as defined by Indiana Code section 24-4-9-5 and that any remaining dispute was subject to arbitration. Progressive now appeals.

---

[5] Indiana Code section 27-8-9-6(d) provides:

> "Permittee" means any person who is granted permission to operate a motor vehicle by the owner of the motor vehicle.

# Discussion and Decision

## I. Standard of Review

Our standard of review in matters of summary judgment is the same as the trial court: summary judgment is appropriate only where the evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Hughley v. State,* 15 N.E.3d 1000, 1003 (Ind. 2014); Ind. Trial Rule 56(C). Cross-motions for summary judgment do not alter our standard of review and we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012). We review de novo the trial court's interpretation of a contract, *Showboat Marina Casino P'ship v. Tonn & Blank Constr.*, 790 N.E.2d 595, 597 (Ind. Ct. App. 2003), as well as orders compelling arbitration, *Brumley v. Commonwealth Bus. Coll. Educ. Corp.*, 945 N.E.2d 770, 775 (Ind. Ct. App. 2011).

## II. Agreement to Arbitrate

Empire contends the dispute is subject to arbitration while Progressive argues the dispute is outside the scope of the Arbitration Agreement and, even if the dispute is within the scope, Empire failed to meet its burden to compel arbitration.

# A. Scope of the Arbitration Agreement

[13] Although often comingled, we view Progressive's argument regarding the scope of the Arbitration Agreement as consisting of two, separate components. First, Progressive argues that its action is outside the scope of the Arbitration Agreement because it sought a determination of whether the courtesy car was a loan, a rental, or a lease, rather than a determination of priority. Second, Progressive contends that declaratory judgment actions are outside the scope of the Arbitration Agreement.

[14] Indiana recognizes a strong policy favoring enforcement of arbitration agreements. *Northwestern Mut. Life Ins. Co. v. Stinnett*, 698 N.E.2d 339, 343 (Ind. Ct. App. 1998). However, because arbitration is a matter of contract, a party cannot be required to submit to arbitration unless he or she has agreed to do so. *Int'l Creative Mgmt., Inc. v. D & R Entm't Co. Inc.*, 670 N.E.2d 1305, 1311 (Ind. Ct. App. 1996), *trans. denied*. In other words, arbitration is a method to resolve disputes, but only disputes that the parties have mutually agreed to submit to arbitration.

## 1. Issue of Concurrent Coverage

[15] We first consider the scope of the Arbitration Agreement. Whether parties have agreed to arbitrate a dispute is a matter of contract interpretation and the parties' intent. *Am. Arbitration Ass'n v. North Miami Cmty. Sch.*, 866 N.E.2d 296, 301 (Ind. Ct. App. 2007). In determining whether parties agreed to arbitrate a particular dispute, the court decides whether the dispute, on its face, is within

the language of the arbitration provision. *Chesterfield Mgmt., Inc. v. Cook,* 655 N.E.2d 98, 101 (Ind. Ct. App. 1995), *trans. denied.* A reviewing court must attempt to determine the intent of the parties at the time the contract was made by examining the language used to express their rights and duties. *Anonymous, M.D. v. Hendricks*, 994 N.E.2d 324, 329 (Ind. Ct. App. 2013). Additionally, "[w]hen construing arbitration agreements, every doubt is to be resolved in favor of arbitration," and the "parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the language used." *Mislenkov v. Accurate Metal Detinning, Inc.,* 743 N.E.2d 286, 289 (Ind. Ct. App. 2001). We do not, however, extend arbitration agreements beyond the clear language of the agreement and we will not extend arbitration agreements by construction or implication. *Id.*

[16]  Empire contends that Progressive asked the trial court to determine priority in a concurrent coverage dispute and this is therefore "precisely the type of matter that is required to be arbitrated under the [Arbitration Agreement]." Brief of Appellee at 11. In support of its argument, Empire points to the language of the Arbitration Agreement and alleges that once a settlement occurred and it sought to collect a remaining $328.45 from Progressive, the dispute became a dispute of concurrent coverage subject to compulsory arbitration.

[17]  To determine whether a dispute falls within the provisions of an arbitration agreement we turn to the contract's plain language. *Chesterfield Mgmt.,* 655 N.E.2d at 101. Here, the Arbitration Agreement provides that arbitration is compulsory where both parties have "issued separate policies of property . . .

insurance . . . or . . . concurrent coverage to the same party or parties asserted to cover an accident, occurrence or event out of which a . . . claim or suit for . . . property damage arises." Appellant's App., Vol. III at 75. Through concurrent coverage—Progressive's coverage of Rivera and Empire's coverage of Terry Lee Honda—both parties allege the other's policy covers an accident out of which property damage arose, i.e., Rivera's accident in the courtesy car.

[18] Turning to the parties' intent, the Arbitration Agreement reveals that Progressive and Empire sought to resolve disputes of concurrent coverage by arbitration. Indeed, the Arbitration Agreement is written broadly and includes only six enumerated exclusions, none of which are alleged to be present here. *See* Appellant's App., Vol. III at 75. Furthermore, the contract provides:

> The decision of the arbitrator(s):
>
> (a) shall be based on local jurisdictional law consistent with accepted claim practices.
> (b) *is final and binding* without the right of rehearing or appeal except when allowed . . . .

*Id*. (emphasis added).

[19] Accordingly, the dispute presented, one of concurrent coverage asserted to cover an accident out of which property damage arose, is within the plain language of the Arbitration Agreement. Given the Arbitration Agreement's plain language, limited exclusions, and the parties' intent to resolve such disputes by compulsory arbitration, we conclude that Empire and Progressive

agreed to arbitrate the determination of priority in concurrent coverage disputes.

## 2. Question of Priority

[20] Next, we consider whether Progressive's action is outside the scope of the Arbitration Agreement because it sought a determination that the courtesy car was a loan. Through its Amended Complaint for Declaratory Judgment, Progressive asked the trial court to enter an order declaring:

> (A) that the arrangement Ms. Rivera had with Terry Lee Honda was, as a matter of Indiana law, not a rental agreement or a lease agreement;
>
> (B) that under Indiana law, Terry Lee Honda loaned the 2016 Honda CRV to Maria Rivera; and that
>
> (C) the Court grant Progressive all other just and proper relief in the premises.

Appellant's App., Vol. II at 78.

[21] Insurance coverage for loaned vehicles are governed by Indiana Code section 27-8-9-7(b), which provides:

> In any case arising from a permittee's use of a motor vehicle for which the owner of the vehicle has motor vehicle insurance coverage, the owner's motor vehicle insurance coverage is considered primary if both of the following apply:

> (1) The vehicle, at the time damage occurred, was operated with the permission of the owner of the motor vehicle.

> (2) The use was within the scope of the permission granted.

Under Indiana Code section 27-8-9-7(b), Empire's coverage would be considered primary as the motor vehicle insurance coverage of the owner of the courtesy car, Terry Lee Honda.

[22] Because Progressive asked the trial court to declare the courtesy car was a loaned vehicle and Empire's coverage would therefore be primary, Empire characterizes Progressive's Amended Complaint for Declaratory Judgment as an attempt to sidestep the Arbitration Agreement by asking the trial court to declare, "'One fourth plus one fourth equals two fourths,' but ask[ing] the court to refrain from declaring, 'Two fourths equal one half.'" Br. of Appellee at 15.

[23] We agree with Empire that Progressive poses a question of priority by another name. Contrary to Progressive's repeated assertions on appeal that it asked the trial court to determine whether the courtesy car was loan, a rental, or a lease, it did not. Rather, Progressive asked the trial court to declare "that under Indiana law, Terry Lee Honda loaned the [courtesy car] to Maria Rivera[.]" Appellant's App., Vol. II at 78. The law of priority is clear, if the courtesy car was a loaned vehicle, Empire's coverage is primary. *See* Ind. Code § 27-8-9-7(b). In our view, Progressive presented the trial court with a concurrent coverage dispute and sought a determination of priority. As discussed above,

such questions are reserved for compulsory arbitration and Progressive's attempt to circumvent the Arbitration Agreement must fail.

### 3. Declaratory Judgment

Progressive next contends that its declaratory judgment action is outside the scope of the Arbitration Agreement and that even if it was not, it is "perfectly fitting for Indiana's trial judges to declare what Indiana law is, even when another forum might be able to do the same work." Appellant's Reply Br. at 8.

Progressive seeks a declaratory judgment pursuant to the Uniform Declaratory Judgment Act. The Act provides Indiana courts have the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed[,]" Ind. Code § 34-14-1-1, under a "written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, [or] contract," Ind. Code § 34-14-1-2.

We find Progressive's argument regarding declaratory judgment actions inconsistent with Indiana's strong policy in favor of enforcing arbitration. *See Nightingale Home Healthcare, Inc. v. Helmuth,* 15 N.E.3d 1080, 1084 (Ind. Ct. App. 2014) ("[I]t is well settled that Indiana recognizes a strong policy favoring enforcement of arbitration agreements."). Arbitrators are routinely called upon to interpret Indiana law. *See Wright v. City of Gary,* 963 N.E.2d 637, 645 (Ind. Ct. App. 2012), *trans. denied.* (noting that only where an arbitrator manifestly disregards the law may a reviewing court interfere); *Fiducial Inv. Advisors v.*

*Patton*, 900 N.E.2d 53, 60 (Ind. Ct. App. 2009) (noting that when we review an arbitration, a mistake of law or erroneous interpretation of the law does not constitute an act in excess of the arbitrator's powers). Moreover, allowing declaratory judgment actions would undermine the purpose of arbitration, which is to afford parties an opportunity to reach a disposition in an easier, more expeditious manner than by litigation.[6] *Bopp v. Brames*, 677 N.E.2d 629, 631 (Ind. Ct. App. 1997).

[27] Accordingly, we conclude Progressive's declaratory judgment action cannot be said to be outside the scope of the Arbitration Agreement where there is evidence the parties intended for an arbitrator to decide matters of law.[7] Indeed, if we were to allow such artful pleading, no party would be bound to arbitrate disputes involving issues of statutory interpretation.

[28] However, the parties were free to exclude declaratory judgment actions or issues requiring statutory interpretation from the Arbitration Agreement. In fact, the parties were free to exclude anything they wished. *Ransburg v. Richards,* 770 N.E.2d 393, 395 (Ind. Ct. App. 2002) ("As a general rule, the law allows persons of full age and competent understanding the utmost liberty of contracting, and their contracts, when entered into freely and voluntarily, are

---

[6] The case before us, involving a dispute over $328.45, is a prime example of the costly litigation arbitration is intended to avoid.

[7] The Arbitration Agreement provides: "The decision of the arbitrator(s): (a) shall be based on local jurisdictional law consistent with accepted claim practices." Appellant's App., Vol. III at 75.

enforced by the courts."); *Bopp,* 677 N.E.2d at 632 ("[A]rbitration arises through contract, and the parties are essentially free to define for themselves what questions may be arbitrated, remedies the arbitrator may afford, and the extent to which a decision must conform to the general principles of law."). They, of course, did not, and we must resolve every doubt in favor of arbitration. *Mislenkov,* 743 N.E.2d at 289.

[29] In sum, we find Progressive poses a question of priority by another name. Progressive blatantly asked the trial court to determine priority in its original complaint, an issue which falls under the provisions of the Arbitration Agreement. Then, through artful pleading of the Amended Complaint, Progressive asked the trial court to declare the courtesy car was a loaned vehicle. Because the law of priority is clear, despite amending its complaint, Progressive was still seeking a determination that Empire's coverage was primary. Had Progressive not contracted away its right to seek declaratory judgment, that tactic *might* have been successful. However, as it stands, Progressive's argument is one of form over substance and the dispute is still subject to arbitration.

## B. Burden to Compel Arbitration

[30] Progressive also argues Empire failed to meet its burden in seeking to compel arbitration. Under Indiana contract law, the party seeking to compel arbitration has the burden of demonstrating the existence of an enforceable arbitration agreement. *Wilson Fertilizer & Grain, Inc. v. ADM Milling Co.*, 654

N.E.2d 848, 849 (Ind. Ct. App. 1995), *trans. denied.* Then, the movant must demonstrate that the disputed matter is the type of claim the parties agreed to arbitrate. *Brumley*, 945 N.E.2d at 776.

[31]  Progressive does not dispute it is a signatory of the Arbitration Agreement. Instead, Progressive maintains that Empire failed to meet its burden by relying on hearsay evidence, in the form of the "Frequently Asked Questions" page of Arbitration Forums, Inc.'s website, to show that the disputed matter is a type of claim the parties agreed to arbitrate. Notwithstanding hearsay concerns, Empire also argued that the specific dispute fell within the plain language of the Arbitration Agreement and that the issue was nothing more than one of concurrent coverage and a primary/excess dispute. In support thereof, Empire designated the Arbitration Agreement along with an affidavit supporting the fact that both Progressive and Empire were signatories to the Arbitration Agreement. Appellant's App., Vol. III at 68. This evidence alone is sufficient to satisfy Empire's burden to demonstrate that the specific dispute is subject to arbitration.

[32]  Satisfied that Empire and Progressive intended to arbitrate the dispute Progressive brought in the trial court, such arbitration must be compelled. *TWC, Inc., v. Binford,* 898 N.E.2d 451, 453 (Ind. Ct. App. 2008) ("Once the court is satisfied that the parties contracted to submit their dispute to arbitration, the court is required by statute to compel arbitration.").

## C. Rental Agreement

[33]    Finally, Progressive argues the trial court erred by declaring the Courtesy Car Agreement a rental agreement. We agree, but for reasons different than Progressive posits.

[34]    The trial court found that the Courtesy Car Agreement was a valid rental agreement as defined by Indiana Code section 24-4-9-5 before ordering any remaining issues to arbitration. In doing so, the court effectively denied part of Empire's motion for summary judgment—i.e., the argument that the entire dispute was subject to arbitration. Most of the parties' arguments on summary judgment and now on appeal involve the question of whether the Courtesy Car Agreement, and its underlying transaction, was a rental under Indiana Code section 24-4-9-5, a loan under Indiana Code section 27-8-9-7, or a lease under Indiana Code section 27-8-9-9. Because the Arbitration Agreement controls the dispute presented, that question must remain for an arbitrator. *See St. John Sanitary Dist. v. Town of Schererville*, 621 N.E.2d 1160, 1162 (Ind. Ct. App. 1993) (noting that when determining whether a dispute is subject to arbitration "the court will not rule on the potential merits of the underlying claims."). The trial court erred in concluding otherwise.

# Conclusion

[35]    For the reasons discussed above, we conclude that the Arbitration Agreement controls the dispute now before us. Accordingly, we reverse the trial court's finding that the Courtesy Car Agreement was a rental agreement, affirm the

trial court's order of partial arbitration, and remand to the trial court to enter an order compelling the entire dispute to arbitration.

[36] Affirmed in part, reversed in part, and remanded.

Kirsch, J., and Altice, J., concur.